## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 19-cv-23590-BLOOM/LOUIS

HAVANA DOCKS CORPORATION,

        Plaintiff,

vs.

ROYAL CARIBBEAN CRUISES, LTD.

        Defendant.

_____/

## PLAINTIFF'S MOTION FOR LEAVE TO FILE
## FIRST AMENDED COMPLAINT, AND REQUEST FOR HEARING

Plaintiff Havana Docks Corporation ("Havana Docks") moves for leave to file a first amended complaint and states as follows.

### INTRODUCTION

On January 3 and 7, 2020, respectively, the Court dismissed with prejudice two separate, but related, cases brought by Havana Docks against MSC Cruises ("MSC") and Norwegian Cruise Line ("NCL"). (*See Havana Docks v. MSC Cruises SA Co, et al.*, 19-cv-23588, ECF No. 40 (the "*MSC* Case"); *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 19-cv-23591, ECF No. 42 (the "*NCL* Case") (collectively, the "Dismissal Orders").) As demonstrated below, Havana Docks can state a claim against Defendant Royal Caribbean Cruises, Ltd. ("Royal") under Title III and the Court's interpretation of that statute in the Dismissal Orders. Havana Docks, thus, respectfully requests leave to file a first amended complaint, attached as **Exhibit A**, that sets forth new factual allegations that give rise to a claim for relief under Title III.

<u>First</u>, as the Eleventh Circuit has made clear, Title III of the Cuban Liberty and Democratic Solidarity Act ("LIBERTAD Act") established a new statutory remedy recognizing the certified claim owned by the former owners of confiscated

property as the statutorily created property interest that is actionable under the LIBERTAD Act. *See Glen v. Club Mediterranee S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006) ("The Helms-Burton Act refers to the property interest that former owners of the confiscated property now have as ownership of a 'claim to such property.'"). If given an opportunity to amend, Havana Docks can allege facts showing its certified claim is not time-limited. The terms of the certified claim expressly state that the claim does not expire until "the date of settlement." (ECF No. 31-8 at 4, 12, 13.) That date has not yet come.

Second, Havana Docks can factually allege that the concession did not "expire" by its terms in 2004. As an amended complaint would make clear, Havana Docks' concession agreement included a 99-year leasehold interest that was cut short by 44-years because of the confiscation by the Cuban Government, and thus did not expire. It was confiscated. Havana Docks' claim certified by the Foreign Claims Settlement Commission ("FCSC") included the value of the loss of the remaining 44 years of the concession. Those 44-years of concessionary rights are property interests in the Subject Property that Havana Docks has never enjoyed and received no compensation for. They remain outstanding and can support a claim under Title III.

Third, the concession agreement, which the Court has not yet had the benefit of reviewing, and which terms would be alleged in the amended complaint, includes an indemnity right to be paid by the Cuban Government to Havana Docks that is expressly triggered by the expropriation. That unsatisfied indemnity right was not time-limited and was included in the valuation of the loss certified by the FCSC. The plain language of the LIBERTAD Act recognizes this type of unpaid debt as an obligation that attaches to the confiscated property. *See* 22 U.S.C. § 6023(4)(B)(ii). So, too, does Cuban law in effect at the time of expropriation. *See* Codigo Civil, Title II, Art. 349. This right to indemnity is an outstanding interest in the Subject Property that is actionable under Title III, as Havana Docks will factually allege if permitted leave to file a first amended complaint.

Fourth, Havana Docks' certified claim recognizes ownership of property beyond the concession that was not addressed in the Dismissal Orders. If allowed to

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

replead, Havana Docks will also allege facts to show that the FCSC certified a valuation for losses of property interests beyond the confiscated concession.

## PROCEDURAL BACKGROUND

The Motion implicates four cases that are or were pending before this Court. Havana Docks will briefly recount the relevant procedural history of each.

**I.** *Carnival* **Case.**

Havana Docks sued Carnival Corporation ("Carnival") on May 2, 2019, asserting one count under Title III of the LIBERTAD Act. (*Havana Docks Corp. v. Carnival Corp.*, 19-cv-21724, ECF No. 1 (the "*Carnival* Case").) The basis for the suit is Carnival's trafficking on certain commercial waterfront real property in the Port of Havana, Cuba, identified as the Havana Cruise Port Terminal (the "Subject Property"), which was confiscated from Havana Docks on October 24, 1960, by the Cuban Government. (*Id.*) In 1971, the FCSC certified the amount and validity of the claim by Havana Docks for the loss it incurred resulting from the confiscation of the properties included in the Subject Property ("Claim No. CU-2492"). (*Carnival* Case at ECF No. 1-1.) By its terms, Claim No. CU-2492 does not expire until "the date of settlement." (*Id.* at 4, 12, 13.)

Carnival moved to dismiss, arguing that Havana Docks did not have a property interest in the Subject Property at the time of the alleged trafficking acts. On August 28, 2019, the Court denied that argument, reasoning that Carnival incorrectly conflated a claim to property and a property interest, and that Havana Docks had sufficiently alleged ownership of a claim to the Subject Property.

In light of the Dismissal Orders, on January 7, 2020, Carnival filed a corrected motion for reconsideration of the Court's earlier order denying its motion to dismiss. Havana Docks opposes that motion and filed its response brief on January 31, 2020. Discovery is presently stayed pending the Court's resolution of Carnival's motion for reconsideration.

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

## II.    *MSC* Case and *NCL* Case.

In two separate, but related suits, Havana Docks sued MSC and NCL under Title III on August 27, 2019. MSC and NCL each moved to dismiss, arguing, like Carnival, that Havana Docks could not pursue its claims because it did not have a property interest in the Subject Property at the time of the alleged trafficking event.

By separate orders dated January 3 and 7, 2020, the Court granted both motions, reconsidering its prior interpretation of Title III in the *Carnival* Case and dismissing Havana Docks' complaints against MSC and NCL with prejudice. (Dismissal Orders.) Three factual findings underpin both orders: that Havana Docks' claim only relates to a time-limited concession; that Havana Docks' confiscated concession interest expired by its own terms in 2004; and that MSC and NCL did not begin trafficking in the Subject Property until after 2004. (*MSC* case, ECF No. 40; *NCL* case, ECF No. 42 at 6 n.1, 8-10.)

These cases are presently closed.

## III.    **This Case.**

Havana Docks brought this action on August 27, 2019, against Royal due to its unauthorized trafficking in the Subject Property. (ECF No. 1.) Royal answered the Complaint on October 4, 2019. (ECF No. 16.) The Court entered its scheduling order in this case on November 26, 2019, setting the January 24, 2020, as the deadline to amend pleadings. (ECF No. 21.)

In light of the Dismissal Orders, Royal moved for judgment on the pleadings on January 10, 2020, arguing that it "began its cruise service to Havana in 2017, which was years after the expiration of Plaintiff's concession for the Subject Property." (ECF No. 26.) Havana Docks opposes the motion and filed its response on February 12, 2020. Discovery is presently stayed pending the Court's resolution of Royal's motion for judgment on the pleadings. (ECF No. 30.)

## IV.    **Present Posture**.

Havana Docks can state claims against NCL, MSC, Royal and Carnival under Title III and this Court's construction of that Act in the Dismissal Orders.

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

Thus, in the *MSC* Case and the *NCL* Case, Havana Docks filed motions for reconsideration and leave to amend on January 31, 2020 and February 4, 2020, respectively. (*MSC* Case, ECF No. 42; *NCL* Case, ECF No. 44.) These motions request the Court to reinstate those cases and allow Havana Docks to file first amended complaints that are attached to both filings as Exhibit A.

In the *Carnival* Case, Havana Docks has moved for leave to file a first amended complaint. (*Carnival* Case, ECF No. 74.) In addition to the theories common among the four defendants, Carnival uniquely (to Havana Docks' current knowledge) trafficked in the Subject Property at various points between 1996 and 2001. As the Court held in the Dismissal Orders, that conduct is actionable under Title III. (*See* Dismissal Orders, at 9, 10.) Havana Docks factually alleges this new theory of liability, and others, in its proposed amended complaint that is attached as Exhibit A to the motion for leave. (*Carnival* Case, ECF No. 74-1.)

Havana Docks now moves for leave to file a first amended complaint that also sets forth new factual allegations giving rise to Title III claim against Royal.

In all four cases, Havana Docks has or will request an omnibus hearing.

## LEGAL STANDARD

Rule 15 of the Federal Rules of Civil Procedure governs amendment to pleadings. Apart from initial amendments permissible as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*. Generally, amendment should be given unless "(1) [] there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) [] allowing amendment would cause undue prejudice to the opposing party; or (3) [] amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

## ARGUMENT

In the Dismissal Orders, the Court clearly outlined the factual allegations necessary for Havana Docks to state a claim against Royal under Title III: Royal must have trafficked in the Subject Property "before [Havana Docks'] interest in the property expired." (Dismissal Orders at pp. 9, 10.) As set forth below, Royal trafficked in the Subject Property before Havana Docks' interest expired. Havana Docks, thus, can state a Title III claim against Royal and respectfully requests leave to file a first amended complaint to allege these new factual allegations.

**I.    The Certified Claim is the Property Interest at Stake in This Litigation, and It is Actionable Under These Facts.**

Havana Docks' certified claim is a property interest, created by federal law and recognized by the Eleventh Circuit, that has not expired and remains actionable under Title III.

Title III is a unique statute creating a new statutory remedy, which was passed, in part, "to protect United States nationals against confiscatory takings and the wrongful trafficking in property confiscated by the Castro regime." 22 U.S.C. § 6022(6). The U.S. Supreme Court has long recognized that the legal effect of a foreign government's expropriation of property is to divest the traditional property interests of private persons and entities and vest those rights in the foreign government. *See Ricaud v. Am. Metal Co.*, 246 U.S. 304, 309-10 (1918) (seizure of bullion by Mexico divested a U.S. citizen of title and ownership of the bullion); *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 414-15 (1964) (Cuba's confiscation vested in Cuba the "property right in" and "dominion over" sugar expropriated by Cuba).

Recognizing the reality that attaching traffickers' liability to the use of current property interests would render the law unenforceable (because those traditional property law interests were necessarily extinguished by confiscation), Congress created a new cause of action for U.S. nationals, such as Havana Docks. *See* 22 U.S.C. §§ 6081(11), 6082(a)(1)(A); *Glen*, 450 F.3d at 1255 (expressly recognizing that the LIBERTAD Act provides a "new statutory remedy available [] to United States

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

nationals who were victims of [Cuban Government] confiscations."). As Chief Judge Moore noted in *Glen*, Title III "do[es] not provide that those whose property was taken by the Cuban government retain *legal title* to that property, but rather permits any U.S. national 'who owns a claim to such [confiscated] property for money damages' to sue those who traffic in such property." 365 F. Supp. 2d at 1269 (quoting 22 U.S.C. § 6082(a)(1)(A)) (emphasis in original).

The Eleventh Circuit affirmed in a published opinion, explaining that "the Helms-Burton Act does not proclaim the ineffectiveness of the Cuban expropriations." *Glen*, 450 F.3d at 1255. In so doing, it declined to speculate about what property interests the plaintiffs would have possessed 'but for confiscation,' and instead recognized the reality that expropriation extinguished all such interests and vested them in the Cuban Government. *Id.* (LIBERTAD Act did not establish ownership of confiscated property); *id.* at 1256 ("we hold that the Helms-Burton Act does not affect any change to the existing law" (citing *Sabbatino*, 376 U.S. at 428)). Giving meaning to the LIBERTAD Act's cause of action, the Eleventh Circuit then held that a "claim" is an interest in confiscated property and that Title III is the Congressionally-created mechanism for enforcing that interest. *Id.*

Thus, as *Glen* instructs, the fundamental premise underpinning the LIBERTAD Act's enforcement scheme is that a "United States national who <u>owns the claim to such property</u>" may sue under Title III.  22 U.S.C. § 6082(a)(1)(A) (emphasis added).[1] And, pursuant to the LIBERTAD Act, the Court is required to "accept as conclusive proof of ownership of an interest in property a certification of a claim to ownership of that interest that has been made by the [FCSC]." 22 U.S.C. § 6083(a)(1).

---

[1] To state a *prima facie* case of trafficking under Title III, a plaintiff must allege ownership of a <u>claim</u>, not a current ownership of, or possessory interest in, the <u>property</u>. 22 U.S.C. § 6082(A).  Applying its ordinary and natural meaning, the term "claim," in the context of Title III, refers to the assertion of a right to payment against "any person . . . traffics in property which was confiscated by the Cuban Government . . . ." 22 U.S.C. § 6082(a)(1)(A).

Title III therefore requires a court to look to the claim as certified, not to engage in a "but for" analysis to determine whether, but for the confiscation, the person would have a current, traditional property interest. Under Title III, the certified claim is the property interest in confiscated property. It certifies losses resulting from the confiscation of the bundle of property interests relating to the Subject Property that existed in 1960 and were never realized due to expropriation.[2]  And the evidence in the record, although limited at this stage, demonstrates that Havana Docks' certified claim has no time limit. The terms of the certified claim expressly state that the claim does not expire until "the date of settlement." (ECF No. 31-8 at 4, 12, 13.) That date has not yet come.[3]  The certified claim is still actionable.

If permitted leave to file a first amended complaint, Havana Docks will factually allege that its certified claim is the property interest in the Subject Property that is at issue in this case.

---

[2] "Section 503(a) of the Act provides that the Commission shall receive and determine in accordance with applicable substantive law, including international law, the amount and validity of claims by nationals of the United States against the Government of Cuba arising since January 1, 1959 for losses resulting from the nationalization, expropriation, intervention or other taking of, or special measures directed against, property including any rights or interests therein owned wholly or partially, directly or indirectly at the time by nationals of the United States. Section 502(3) of the Act provides: The term 'property' means any property, right, or interest including any leasehold interest, and debts owed by the Government of Cuba or by enterprises which have been nationalized, expropriated, intervened, or taken by the Government of Cuba and debts which are a charge on property which has been nationalized, expropriated, intervened or taken by the Government of Cuba." (ECF No. 31-8, at 5, 6.)

[3] These claims were certified with the purpose—and hope—that they would one day be settled with a "friendly government in Cuba when diplomatic relations [] resumed." Department of Justice, *Section II, Complete of the Cuban Claims Program under Title V of the International Claims Settlement Act of 1949*, at 70, at https://www.justice.gov/sites/default/files/fcsc/docs/final-report-cuba-1972.pdf ("The stated purpose of the Congress in directing that the amounts of these losses be certified to the Secretary of State is to provide him with appropriate information which would be useful in future negotiation of a claims settlement agreement with a friendly government in Cuba when diplomatic relations are resumed.").

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

## II.     The Concession Includes a Bundle of Interests That Never Expired.

Havana Docks can also factually allege that the concession is not a time-limited interest that "expired" by its terms in 2004.

First, Havana Docks' 99-year concession did not by its own terms expire in 2004 because it was confiscated. As Havana Docks explains in its opposition to Royal's motion for judgment on the pleadings, the legal effect of the Cuban Government's expropriation of the Subject Property in 1960 was to extinguish all property rights previously held by Havana Docks and immediately vest all rights to that property in the Cuban Government. *See, e.g.*, *Sabbatino*, 376 U.S. at 414-15 (Cuba's confiscation vested in Cuba the "property right in" and "dominion over" sugar expropriated by Cuba). The property rights governed by the concession, therefore, did not "revert[] to the Cuban Government by the terms of the concession itself." (Dismissal Orders, at 8.) The concession, along with the other properties identified in the certified claim, was taken from Havana Docks and vested in the Cuban Government in 1960, as a result of the confiscation.

Second, the concession agreements, which the Court did not have the benefit of reviewing prior to entering the Dismissal Orders, granted Havana Docks a term of 99 years for the use and improvement of, construction upon, operation, and management of the Subject Property; it did not impose a fixed termination date of 2004. (ECF No. 31-4 at p. 4.) Havana Docks used, operated, and made significant improvements on the Subject Property from 1905 until 1960, when it was confiscated by the communist Cuban Government. Thus, when the Subject Property was confiscated, Havana Docks still had a balance of 44 years of concessionary rights remaining; those 44 years of concessionary rights still remain outstanding, and Havana Docks has never been indemnified by anyone for the loss of that property interest. As a result, under Cuban law in force at the time of the confiscation in 1960, Havana Docks still retains, to this day, a reversionary interest of 44 years remaining in the Subject Property (i.e., a future or contingent possessory right). *See, e.g.,* Codigo Civil, Title II, Art. 349 ("No one shall be deprived of his property, except by competent

authority and with sufficient cause of public utility, always after the proper indemnity. If this requisite has not been fulfilled <u>the judges shall protect, and in a proper case, replace the condemned party in possession</u>.") (emphasis added).

Third, the concession expressly granted to Havana Docks the contractual right to be indemnified for the value of the work constructed by it on the Subject Property in the event of expropriation, which is another property interest that is not time-limited:

> *Seventh:* If during the continuance of the concession the works may be expropriated by virtue of Article 50 of the Law of Ports, the government or its departments will indemnify the concessionary to the value of the work constructed by it, including the Custom House Inspectors Department and the wharf on the north side of the pier, but not the value of the machinery, rolling stock, equipment and apparatus referred to in the preceding clause, in case the concessionary may decide to remove them.

(ECF No. 31-3 at p. 5.) This indemnity right gave Havana Docks an interest in the Subject Property that was not time-limited. *See also* Codigo Civil, Title II, Art. 349.

As an express term of the concession, the indemnity right was included in the valuation of the loss certified by the FCSC and remains unpaid. The LIBERTAD Act expressly contemplates this type of property interest and recognizes such an unpaid debt as an obligation that attaches to the confiscated property, as would a mechanic's lien: the LIBERTAD Act defines the term "confiscated" to include "the failure of the Cuban Government to pay, on or after January 1, 1959-- . . . a debt <u>which is a charge on property</u> nationalized, expropriated, or otherwise taken by the Cuban Government." 22 U.S.C. § 6023(4)(B)(ii) (emphasis added); *see also* 22 U.S.C. § 6023(12)(A) (defining "property" to include "any property. . . whether real, personal, or mixed, and <u>any</u> present, <u>future, or contingent right, security, or other interest therein</u>, including any leasehold interest" (emphases added)).

Federal takings precedent is in accord, recognizing that Havana Docks retains an "equitable lien" or interest in the Subject Property that is discharged only by indemnification, (*i.e.* the payment of just compensation). *United States v. Herring*, 750 F.2d 669, 672-73 (8th Cir. 1984) ("[W]hen the United States filed its declaration

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

of taking and made its deposit of estimated compensation in 1960, indefeasible title vested in it subject to the equitable interest in Herring to receive just compensation."); *Fulcher v. United States*, 632 F.2d 278, 284-85 (4th Cir. 1980) (en banc) ("equitable lien" on taken property is discharged by payment of just compensation; *see also* Equitable Lien, Black's Law Dictionary (10th ed. 2014) ("A right, enforceable only in equity, to have a demand satisfied from a particular fund or specific property, without having possession of the fund or property.").

In a first amended complaint, Havana Docks would allege the facts demonstrating that its concession to the Subject Property granted rights that did not expire in 2004.

## III.   The FCSC Certified the Valuation of the Losses for Other Confiscated Property Rights Beyond the Concession.

If permitted leave to amend, Havana Docks will also allege facts to show that the FCSC certified property interests beyond the confiscated concession, and that those other property interests are also not time-limited.[4] (Dismissal Orders, at 7; *see also id.* at 6 n.1, 9.)  The FCSC provided an itemized listing of the property interests that it certified in the claim, as follows:

---

[4] The Complaint alleges that Plaintiff "is the rightful owner of an interest in and claim to certain commercial waterfront real property in the Port of Havana, Cuba identified specifically by the Republic of Cuba ('Cuba') as the Havana Cruise Port Terminal (the 'Subject Property'). (Compl. ¶ 7.) It does not underpin Plaintiff's cause of action to the concession alone. Indeed, as itemized in the certified claim, Plaintiff's interest in that commercial waterfront real property extends beyond the concession itself. Plaintiff can amend its complaint to add that itemized list of interests, as well as the indemnification interests granted by the concession. Plaintiff is filing contemporaneously with this motion a Notice of Filing attaching documents, some of which were obtained from the FCSC through the Freedom of Information Act, that illustrate the nature of Havana Docks' certified claim to the Subject Property.

11

Upon consideration of the entire record, the Commission finds that the valuation most appropriate to the property and equitable to the claimant is that shown in the Balance Sheet for the year ended 1959, supported by the Trial Balance for December 31, 1958. These financial statements reflect the following book values adopted by claimant corporation:

| | |
|---|---:|
| Land and Concession | $ 2,000,000.00 |
| San Francisco and Machina Piers | 4,758,829.00 |
| Santa Clara Pier | 2,110,845.00 |
| Equipment | 419,056.00 |
| Office Furniture and Fixtures | 90,616.00 |
| Railroad Tracks | 22,883.00 |
| Total | $ 9,402,229.00 |

(ECF No. 31-8 at 9.) After taking into account amortization, depreciation, accrued interest, and other adjustments, the FCSC's final decision certified the loss at "Nine Million One Hundred Seventy-nine Thousand Seven Hundred Dollars and Eighty-eight Cents ($9,179,700.88) with interest thereon at 6% per annum from the respective dates of loss to the date of settlement." (*Id*. at 4.)

The certified claim does not certify that any of the additional property interests that form the Subject Property were time-limited at the time of the confiscation. In fact, by the express terms of the concession, Havana Docks was contractually entitled to be indemnified by the Cuban Government as a result of the expropriation for the value of that work constructed by it on the Subject Property.

## IV.    Good Cause Exists to Grant this Motion.

The deadline to amend pleadings in this case was January 24, 2020. (ECF No. 21.) Where, as here, a pretrial deadline to amend pleadings has passed, a party "must first demonstrate good cause under Rule 16(b) before [a court] will consider whether amendment is proper under Rule 15(a)." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998). Havana Docks submits that good cause exists to permit leave

to file a first amended complaint.

Before the Dismissal Orders, the Court's orders denying Carnival's motions to dismiss and to certify an interlocutory appeal were the only direct judicial treatment of the legal question at issue here. (*Carnival* Case, D.E. 47 at 8-9 (denying Carnival's motion to dismiss); *id.*, ECF No. 56, at 5 (order denying Carnival's motion to certify interlocutory appeal, finding no substantial ground for difference of opinion).) Those orders were also among the only judicial treatment of Title III, generally. Thus, Havana Docks reasonably believed it had pled a claim for relief under Title III and relied on the Court's prior orders in that case in not seeking amendment at an earlier stage of litigation.

This motion was filed five weeks after the Dismissal Orders. Havana Docks diligently pursued amendment, which required the development of legal strategy to ensure consistency among Havana Docks' four cases before this Court, factual research, and intermittent absences by Havana Docks' counsel due to personal and familial medical needs as detailed in Docket Entry 27. This motion was filed two and a half weeks after the deadline to amend pleadings in this case, during a time where the Court stayed discovery on agreement of the parties. (ECF Nos. 28, 30.) Havana Docks submits that good cause exists to grant this motion and to permit Havana Docks leave to file a first amended complaint.

## V.     Amendment is Proper Under Rule 15.

Havana Docks should be provided the opportunity to amend its pleading—for the first time—to allege additional facts the Court has not considered that address certain findings made in the Dismissal Orders and to clarify the scope of the certified claim. Leave to amend is appropriate, as none of the *Foman* factors—*e.g.* bad faith, prejudice, dilatoriness, failure to cure, futility—are present. *Foman*, 371 U.S. at 182; *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) ("It is the well-established policy of the federal rules that the plaintiff is to be given every opportunity to state a claim.").

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

## CONCLUSION

For the foregoing reasons, Havana Docks respectfully requests that the Court grant it leave to file the first amended complaint attached as **Exhibit A.**

## REQUEST FOR HEARING

Plaintiff respectfully requests that the Court allow a hearing on this motion. A hearing may be helpful to the Court by allowing for the presentation of facts and evidence about the scope of Plaintiff's interests in Subject Property, as well as oral argument on the novel legal issues presented in this case. An omnibus hearing in this case and those brought by Plaintiff against Carnival Corporation, MSC Cruises and NCL may also allow the Court to efficiently consider common factual and legal questions among the four case and, if appropriate, provide an opportunity to resolve any case management issues that may arise in the cases. Plaintiff estimates that the requested hearing would be two hours.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Southern District of Florida Local Rule 7.1, undersigned counsel certifies that they have conferred with counsel for Royal regarding the relief requested in this motion and Royal opposes this motion.

DATED: February 12, 2020.              Respectfully submitted,

**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
E-mail: eservice@colson.com

By: s/ Roberto Martínez
Roberto Martínez, Esquire
Florida Bar No. 305596
bob@colson.com
Stephanie A. Casey, Esquire
Florida Bar No. 97483
scasey@colson.com
Zachary A. Lipshultz
Florida Bar No. 123594
zach@colson.com
Aziza F. Elayan-Martinez
Florida Bar No. 92736
aziza@colson.com

- and -

**MARGOL & MARGOL, P.A.**
2029 3rd Street North
Jacksonville Beach, Florida 32250
Telephone: (904) 355-7508
Facsimile: (904) 619-8741

Rodney S. Margol, Esquire
Florida Bar No. 225428
Rodney@margolandmargol.com

*Attorneys for Plaintiff Havana Docks Corp.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of the Court.  I also certify that the foregoing document is being served this 12th day of February, 2020, on all counsel of record or pro se parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: s/ Roberto Martínez
Roberto Martínez

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**