## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 19-cv-23590-BLOOM/Louis

HAVANA DOCKS CORPORATION,

     Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

     Defendant.

_____/

### OMNIBUS ORDER

**THIS CAUSE** is before the Court upon Defendant Royal Caribbean Cruises, LTD.'s ("Royal Caribbean") Motion for Judgment on the Pleadings, ECF No. [26], and Plaintiff Havana Docks Corporation's ("Havana Docks" or "Plaintiff") Motion for Leave to File First Amended Complaint, ECF No. [32] ("Motion for Leave to Amend"), (collectively, the "Motions"), and Plaintiff's accompanying Notice of Filing the Declaration of Aziza Elayan-Martinez in Support of Plaintiff's Motion, ECF No. [31] ("Notice"). On March 9, 2020, the Court held a hearing on the Motions, during which the parties argued their respective positions. The Court has carefully considered the Motions, all supporting and opposing submissions, the arguments presented at the hearing, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Royal Caribbean's Motion for Judgment on the Pleadings is denied and Plaintiff's Motion for Leave to Amend is granted.

### I.  BACKGROUND

On August 27, 2019, Havana Docks initiated this action against Royal Caribbean pursuant to Title III of the Cuban Liberty and Democratic Solidarity Act of 1996, 22 U.S.C. § 6021, *et seq.*

(the "LIBERTAD Act," "Title III," or the "Act"), which is commonly referred to as the Helms-Burton Act. ECF No. [1] ("Complaint"). The Court briefly reiterates the facts alleged in this case.

Havana Docks is a U.S. national, as defined by 22 U.S.C. § 6023(15), and "is the rightful owner of an interest in and claim to certain commercial waterfront real property in the Port of Havana, Cuba," identified as the Havana Cruise Port Terminal (the "Subject Property"). *Id.* ¶ 7. In addition, the Complaint alleges that Plaintiff continuously owned, possessed, and used the Subject Property from 1917 until the Cuban Government confiscated it in 1960, *id.* ¶ 8, and that, since the confiscation, the Subject Property has not been returned, nor has Havana Docks received adequate and effective compensation for the confiscation of the Subject Property, *id.* ¶ 10.

Plaintiff's ownership interest in and claim to the Subject Property has been certified by the Foreign Claims Settlement Commission (the "FCSC") pursuant to the International Claims Settlement Act of 1949, 22 U.S.C. § 1621, *et seq.* (the "Claims Settlement Act"). *Id.* ¶ 12.[1] In the Certified Claim, which is central to the dispute between the parties in this action, the FCSC found, based on the record before it, that:

> [Havana Docks] obtained from the Government of Cuba the renewal of a concession for the construction and operation of wharves and warehouses in the harbor of Havana, formerly granted to its predecessor concessionaire, the Port of Havana Docks Company; that claimant acquired at the same time the real property with all improvements and appurtenances located on the Avenida del Puerto between Calle Amargura and Calle Santa Clara in Havana, facing the Bay of Havana; . . . and that claimant corporation also owned the mechanical installations, loading and unloading equipment, vehicles and machinery, as well as furniture and fixtures located in the offices of the corporation.

ECF No. [31-8] at 7. Critically, the FCSC also stated that "[t]he terms of the concession granted by the Cuban Government were to expire in the year 2004, at which time the corporation had to deliver the piers to the government in good state of preservation." *Id.* at 9.

---

[1] The Court will refer to Havana Docks' claim to the Subject Property, ECF No. [31-8], as the "Certified Claim" for the remainder of this Order.

Moreover, according to the Complaint, beginning on or about April 2017, and continuing for at least two years thereafter, Royal Caribbean "knowingly and intentionally commenced, conducted, and promoted its commercial cruise line business to Cuba using the Subject Property by regularly embarking and disembarking its passengers on the Subject Property without the authorization of Plaintiff or any U.S. national who holds a claim to the Subject Property." ECF No. [1] ¶ 13. Thus, Royal Caribbean is alleged to have participated in, and profited from, the Cuban Government's confiscation and possession of the Subject Property without Plaintiff's authorization. *Id.* ¶ 14. Plaintiff claims that Royal Caribbean's knowing and intentional conduct relating to the Subject Property constitutes "trafficking," as defined under 22 U.S.C. § 6023(13)(A), and that Royal Caribbean is liable to Plaintiff for all money damages allowed by statute. ECF No. [1] ¶¶ 15-16.

### A. The LIBERTAD Act

Since Fidel Castro seized power in Cuba in 1959, Cuba has been plagued by "communist tyranny and economic mismanagement," that has substantially deteriorated the welfare and health of the Cuban people. *See* 22 U.S.C. §§ 6021(1)(A), (2). This communist Cuban Government has systematically repressed the Cuban people through, among other things, "massive and systemic violations of human rights" and deprivations of fundamental freedoms, *see id.* §§ 6021(4), (24), and the United States has consistently sought to impose effective international sanctions for these violations against the Castro regime, *see id.* §§ 6021(8)-(10).

In 1996, Congress passed the LIBERTAD Act "to strengthen international sanctions against the Castro government" and, relevant to the instant case, "to protect United States nationals against confiscatory takings and the wrongful trafficking in property confiscated by the Castro regime." 22 U.S.C. §§ 6022(2), (6). To that end, under Title III of the Act, Congress denounced

the Cuban government's history of confiscating property of Cuban citizens and U.S. nationals, explaining that "[t]he wrongful confiscation or taking of property belonging to United States nationals by the Cuban Government, and the subsequent exploitation of this property at the expense of the rightful owner, undermines the comity of nations, the free flow of commerce, and economic development." 22 U.S.C. §§ 6081(2)-(3). The Act explains that foreign investors who traffic in confiscated properties through the purchase of equity interests in, management of, or entry into joint ventures with the Cuban Government to use such properties "complicate any attempt to return [these expropriated properties] to their original owners." *Id.* §§ 6081(5), (7). The LIBERTAD Act cautions that:

> [t]his "trafficking in confiscated property provides badly needed financial benefit, including hard currency, oil, and productive investment and expertise, to the current Cuban Government and thus undermines the foreign policy of the United States—
>     (A) to bring democratic institutions to Cuba through the pressure of a general economic embargo at a time when the Castro regime has proven to be vulnerable to international economic pressure; and
>     (B) to protect the claims of United States nationals who had property wrongfully confiscated by the Cuban Government.

*Id.* §§ 6081(6)(A)-(B).

Further, the lack of effective international remedies for the wrongful confiscation of property and for unjust enrichment from the use of that property by foreign governments at the expense of the rightful owners left U.S. citizens without protection against wrongful confiscations by foreign nations and their citizens. *Id.* § 6081(10). Congress therefore concluded that, "[t]o deter trafficking in wrongfully confiscated property, United States nationals who were the victims of these confiscations should be endowed with a judicial remedy in the courts of the United States that would deny traffickers any profits from economically exploiting Castro's wrongful seizures." *Id.* § 6081(11); *see also* 22 U.S.C. § 6082(a)(1)(A). As a result, in passing Title III of the LIBERTAD Act, "Congress created a private right of action against any person who 'traffics' in

confiscated Cuban property." *Garcia-Bengochea v. Carnival Corp.*, 407 F. Supp. 3d 1281, 1284 (S.D. Fla. 2019) (citing 22 U.S.C. § 6082(a)(1)(A); 22 U.S.C. § 6023(13)(A)). As that court observed:

> Shortly after Helms-Burton was passed, however, the President invoked Title Ill's waiver provision, and "Title III has since been waived every six months, . . . and has never effectively been applied." *Odebrecht Const., Inc. v. Prasad*, 876 F. Supp. 2d 1305, 1312 (S.D. Fla. 2012). That changed on April 17, 2019, when the U.S. Department of State announced that the federal government "will no longer suspend Title III." *See* U.S. Department of State, Secretary of State Michael R. Pompeo's Remarks to the Press (Apr. 17, 2019), https://www.state.gov/remarks-to-the-press-11/. As a result, Title III became effective for the first time on May 2, 2019 . . . .

*Id.*

## B. Relevant Proceedings

On the same day that the suspension of Title III was lifted, Havana Docks filed one of the first actions in the nation asserting a claim under the Act for trafficking against Carnival Corporation ("Carnival"). *See generally* Complaint, *Havana Docks Corp. v. Carnival Corp.*, No. 19-cv-21724 (S.D. Fla. May 2, 2019), ECF No. [1] ("*Carnival*"). The Complaint in *Carnival* alleged substantially similar facts as those alleged in the instant case, except that the trafficking alleged in *Carnival* began in May 2016. *See generally id.*; *id.* ¶ 12. On May 30, 2019, Carnival filed a Motion to Dismiss, arguing in relevant part that Havana Docks failed to state a claim under the LIBERTAD Act because the Complaint and the Certified Claim attached as an exhibit indicated that Havana Docks did not have an ownership interest in the Subject Property at the time Carnival began utilizing it. *See* Motion to Dismiss, *Carnival*, No. 19-cv-21724 (S.D. Fla. May 30, 2019), ECF No. [17] at 11-15 ("Carnival's Motion to Dismiss"). This Court rejected the argument and agreed with Havana Docks that Carnival's interpretation conflated ownership of an interest in property and ownership of a certified claim to such property, noting that the Act does not contain any requirement that the trafficking occur during the time in which a claimant holds its interest in

the property. *See* Order, *Carnival*, No. 19-cv-21724 (S.D. Fla. Aug. 28, 2019), ECF No. [47] at 8 ("*Carnival* Order"). Ultimately, the Court denied Carnival's Motion to Dismiss. *Id.*

On August 27, 2019, Havana Docks filed three additional actions under the LIBERTAD Act against: (1) MSC Cruises SA Co. and MSC Cruises (USA) Inc. (collectively, "MSC") for trafficking beginning in December 2018, *see generally* Complaint, *Havana Docks Corp. v. MSC Cruises SA Co.*, No. 19-cv-23588 (S.D. Fla. Aug. 27, 2019), ECF No. [1] ("*MSC*"); (2) Royal Caribbean in this case, *see generally* ECF No. [1]; and (3) Norwegian Cruise Line Holdings, Ltd. ("NCL") for trafficking beginning in 2017, *see generally* Complaint, *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, No. 19-cv-23591 (S.D. Fla. Aug. 27, 2019), ECF No. [1] ("*NCL*").[2]

With regard to those three cases, Royal Caribbean filed an Answer in response to Havana Docks' Complaint in the instant action. *See* ECF No. [17]. MSC and NCL, however, both moved to dismiss Havana Docks' Complaint in their respective cases and attached the Certified Claim, arguing in relevant part that Plaintiff's claim failed as a matter of law because Havana Docks' interest in the Subject Property was a leasehold interest that expired in 2004, and Havana Docks therefore could only assert a claim under Title III for trafficking that occurred prior to the expiration of its leasehold interest. *See* Motion to Dismiss, *MSC*, No. 19-cv-23588 (S.D. Fla. Oct. 11, 2019), ECF No. [24] at 9-10 ("MSC's Motion to Dismiss"); Motion to Dismiss, *NCL*, No. 19-cv-23591 (S.D. Fla. Oct. 11. 2019), ECF No. [31] at 17-21 ("NCL's Motion to Dismiss"). In its responses in both cases, Havana Docks relied heavily on the Court's holding in the *Carnival* Order in arguing that it had sufficiently alleged a claim for relief under Title III.

---

[2] Unlike the Complaint in *Carnival*, the Complaints in *MSC*, *NCL*, and the instant case did not attach the Certified Claim as an exhibit. *See generally* ECF No. [1]; Complaint, *MSC*, No. 19-cv-23588 (S.D. Fla. Aug. 27, 2019), ECF No. [1]; Complaint, *NCL*, No. 19-cv-23591 (S.D. Fla. Aug. 27, 2019), ECF No. [1].

In ruling on MSC's Motion to Dismiss and NCL's Motion to Dismiss, the Court found it necessary to reconsider its ruling in the *Carnival* Order. The Court determined that the issue regarding the nature of Havana Docks' underlying ownership interest was dispositive, reasoning that because the Certified Claim was predicated on Plaintiff's time-limited leasehold interest, Havana Docks could not, as a matter of law, state a claim for relief under the Act based on trafficking that occurred after Plaintiff's leasehold interest expired. *See Havana Docks v. MSC Cruises SA Co.*, No. 19-cv-23588, 2020 WL 59637, at *3 (S.D. Fla. Jan. 3, 2020) ("*MSC* Order"); *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, No. 19-cv-23591, 2020 WL 70988, at *3 (S.D. Fla. Jan. 7, 2020) ("*NCL* Order") (collectively, the "Motion to Dismiss Orders"). The Court explained that any contrary result would improperly entitle Plaintiff to recover for trafficking in other property interests, thereby granting Havana Docks more rights to the Subject Property than it otherwise would have had by virtue of the confiscation. *MSC*, 2020 WL 59637, at *4-5; *NCL*, 2020 WL 70988, at *5. Thus, the Court granted MSC's Motion to Dismiss and NCL's Motion to Dismiss, and dismissed both cases with prejudice, as based upon the facts as alleged, Havana Docks could not state a claim against either MSC or NCL as a matter of law. *MSC*, 2020 WL 59637, at *5; *NCL*, 2020 WL 70988, at *5.

On January 10, 2020, Royal Caribbean filed its Motion for Judgment on the Pleadings, arguing that, based on this Court's rulings in its Motion to Dismiss Orders, judgment on the pleadings was warranted in this case. ECF No. [26]. On February 12, 2020, Plaintiff filed its Response in Opposition, ECF No. [33], to which Royal Caribbean replied on March 4, 2020, ECF No. [40]. Additionally, on February 12, 2020, Havana Docks filed its Motion for Leave to Amend, ECF No. [32], seeking to file an Amended Complaint, ECF No. [32-1], based on the Court's interpretation of the Act in the Motion to Dismiss Orders, to set forth additional factual allegations

giving rise to a claim for relief under Title III.[3] Royal Caribbean filed a response to the Motion for Leave to Amend on March 3, 2020, ECF No. [39], arguing that the requested amendment is untimely and futile, and Plaintiff filed its reply on March 6, 2020, ECF No. [43].

On March 9, 2020, the Court held a consolidated hearing on the motions pending in *MSC*, *NCL*, and this case, which was attended by Plaintiff's counsel, MSC's counsel, Royal Caribbean's counsel, and NCL's counsel. During this hearing, Havana Docks argued that the Court should reconsider its dismissal with prejudice based on errors of fact and law, and permit Plaintiff to file an Amended Complaint curing the deficiencies noted in the Motion to Dismiss Orders. MSC, Royal Caribbean, and NCL collectively argued that neither reconsideration nor amendment was warranted because the Court concluded that Havana Docks' claim failed as a matter of law.

## II.  LEGAL STANDARD

### A.  Motion for Judgment on the Pleadings

"After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001); *see also Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014); *Palmer & Cay, Inc. v. Marsh & McLennan Cos.*, 404 F.3d 1297, 1303 (11th Cir. 2005); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1291 (11th Cir. 2002). "If it is clear from the pleadings that the plaintiff is not entitled to relief under any set of facts consistent with the complaint, the district court should dismiss the

---

[3] In *MSC* and *NCL*, Plaintiff filed nearly identical motions for reconsideration of the Court's *MSC* Order and *NCL* Order and requested leave to amend, asserting substantially similar arguments as those presented by Havana Docks in its Motion for Leave to Amend in this case. *See* Motion for Reconsideration and Leave to Amend, *MSC*, No. 19-cv-23588 (S.D. Fla. Jan. 31, 2020), ECF No. [42]; Motion for Reconsideration and Leave to Amend, *NCL*, No. 19-cv-23591 (S.D. Fla. Feb. 4, 2020), ECF No. [44].

complaint." *King v. Akima Glob. Servs., LLC*, 775 F. App'x 617, 620 (11th Cir. 2019) (citing *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002)).

In rendering judgment, a court may consider the substance of the pleadings and any judicially noticed facts. *Cunningham v. Dist. Attorney's Office for Escambia Cty.*, 592 F.3d 1237, 1255 (11th Cir. 2010). "A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss." *Guarino v. Wyeth LLC*, 823 F. Supp. 2d 1289, 1291 (M.D. Fla. 2011). "In determining whether a party is entitled to judgment on the pleadings, [courts] accept as true all material facts alleged in the non-moving party's pleading, and [] view those facts in the light most favorable to the non-moving party." *Perez*, 774 F.3d at 1335 (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). Further, a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## B. Motion for Leave to Amend

Apart from initial amendments permissible as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A plaintiff should be afforded the opportunity to test their claim on the merits as long as the underlying facts or circumstances

may properly warrant relief. *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, "[a] district court need not . . . allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). "In this circuit, these 'same standards apply when a plaintiff seeks to amend after a judgment of dismissal has been entered by asking the district court to vacate its order of dismissal pursuant to Fed. R. Civ. P. 59(e).'" *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1077 (11th Cir. 2004) (quoting *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988)). In any event, "the grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman*, 371 U.S. at 182.

Further, the Court of Appeals for the Eleventh Circuit has explained that, "when a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 n.2 (11th Cir. 1998). Federal Rule of Civil Procedure 16 states that requests for leave to amend after the applicable deadline, as set in a court's scheduling order, require a showing of "good cause." Fed. R. Civ. P. 16(b)(4). "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa*, 133 F.3d at 1418 (quotation marks omitted). "[E]ven if the opposing party would not be prejudiced by the modification of a scheduling order, good cause is not shown if the amendment could have been timely made." *Donahay v. Palm Beach Tours & Transp., Inc.*, 243 F.R.D. 697, 699 (S.D. Fla. 2007). If the party seeking relief "was not diligent, the [good cause] inquiry should end." *Sosa*, 133 F.3d at 1418 (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). Thus, a

plaintiff "must establish good cause for their delay in seeking to amend the pleadings after the Court's deadline for amendment before the Court may consider whether to grant leave to amend under Rule 15." *Remington v. Newbridge Sec. Corp.*, No. 13-cv-60384, 2014 WL 505153, at *12 (S.D. Fla. Feb. 7, 2014).

### III. DISCUSSION

Turning to the instant Motions, in the Motion for Judgment on the Pleadings, Royal Caribbean argues that, based on this Court's rulings in the Motion to Dismiss Orders, judgment on the pleadings is warranted here because Havana Docks cannot allege any pre-2004 trafficking. Plaintiff opposes Royal Caribbean's Motion for Judgment on the Pleadings. Further, in the Motion for Leave to Amend, Havana Docks seeks the Court's leave to file an Amended Complaint, ECF No. [32-1], to set forth additional factual allegations giving rise to a claim for relief under Title III. Royal Caribbean opposes the amendment as untimely and futile.

The Court will address each Motion individually below.

#### A. Motion for Judgment on the Pleadings

In Royal Caribbean's Motion for Judgment on the Pleadings, it argues that the Court's rulings in the Motion to Dismiss Orders warrant granting judgment on the pleadings in this case because Plaintiff has not alleged any facts regarding trafficking occurring before 2004 and thus cannot assert a claim under Title III against Royal Caribbean. Royal Caribbean also argues that the Court's consideration of the Motion for Judgment on the Pleadings is limited to the four corners of the Complaint and that the Court should not, as Havana Docks argues, consider any documents beyond the pleading itself.[4] However, in *MSC* and *NCL*, the Court recently granted Plaintiff's

---

[4] Curiously, while Royal Caribbean rightfully notes that the Court's consideration of any documents outside of the Complaint would generally be improper on a motion for judgment on the pleadings, it nonetheless relies almost entirely on one fact not alleged in the Complaint — namely, that Havana Docks' concession expired in 2004.

motions for reconsideration, permitted Havana Docks to file an Amended Complaint, and vacated the Motion to Dismiss Orders because it concluded that the Motion to Dismiss Orders were based on numerous errors of fact and law. *See* Order, *NCL*, No. 19-cv-23591 (S.D. Fla. Apr. 14, 2020), ECF No. [53]; Order, *MSC*, No. 19-cv-23588 (S.D. Fla. Apr. 17, 2020), ECF No. [55] (collectively, the "Orders on Reconsideration"). The reasoning set forth in the Orders on Reconsideration applies with equal force in the instant action. Even setting aside the errors of fact, the numerous errors of law in the Motion to Dismiss Orders, which have since been vacated, preclude Royal Caribbean's entitlement to judgment as a matter of law here.

First, as discussed in the Court's Orders on Reconsideration in *MSC* and *NCL*, the Court's ultimate holdings in its Motion to Dismiss Orders are at odds with the Eleventh Circuit's reasoning in *Glen v. Club Mediterranee S.A.*[5] Specifically, the district court in *Glen I* explained that:

> the [United States] Supreme Court in *Sabbatino* recognized the power of the Cuban government to expropriate property within its borders and to vest the property right in Cuba. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 414-15 (1964) (Cuba's confiscation vested in Cuba the "property right in" and "dominion over" sugar expropriated by Cuba, even though Cuba failed to compensate the former owners). . . . [Further], Titles III and IV of the Helms-Burton Act, do not provide that those whose property was taken by the Cuban government retain *legal title* to that property. Rather, Title III permits any U.S. national "who owns a claim to such [confiscated] property for money damages" to sue those who traffic in such property. 22 U.S.C. §§ 6082(a)(1)(A). Title IV provides sanctions against those who traffic in "confiscated property, a claim to which is owned by a United States national." 22 U.S.C. §§ 6082(a)(2). Titles III and IV simply imply that people like the Glens may own a *claim* for compensation under U.S. law, but they do not *own* the expropriated land itself.

*Glen I*, 365 F. Supp. 2d at 1269-70 (footnote omitted). In affirming the district court's reasoning, the Eleventh Circuit emphasized that "[t]he Helms-Burton Act refers to the property interest that former owners of confiscated property now have as ownership of a 'claim to such property.'" *Glen*

---

[5] *Glen v. Club Mediterranee S.A.*, 450 F.3d 1251 (11th Cir. 2006) ("*Glen II*"); *see also Glen v. Club Mediterranee S.A.*, 365 F. Supp. 2d 1263 (S.D. Fla. 2005) ("*Glen I*"), *aff'd*, 450 F.3d 1251.

*II*, 450 F.3d at 1255 (quoting 22 U.S.C. § 6082(a)(1)(A)); *see also id.* (noting that actions brought under Title III are "actions brought 'on a claim to the confiscated property' against traffickers in the property" (quoting 22 U.S.C. § 6082(a)(4))). As such, the reasoning in *Glen I* and *Glen II* stands for the notion that the Cuban Government's confiscation of property extinguished any ownership rights of those who owned the property prior to the expropriation. *See Glen II*, 450 F.3d at 1255; *Glen I*, 365 F. Supp. 2d at 1269-70. Moreover, obtaining a claim certified by the FCSC allows the victim of such a confiscation to memorialize the *value* of the property interest lost and to put other actors on notice of the victim's outstanding right to compensation based on the now-extinguished property interest taken.[6] This certified claim is *not* an interest in the confiscated property itself; rather, it represents the dollar amount that the victim has suffered by being deprived of its property interests. *See Glen I*, 365 F. Supp. 2d at 1270.

In accordance with *Glen I* and *Glen II*, the Cuban Government's expropriation of the Subject Property extinguished all rights Havana Docks had to the Subject Property. Thus, in lieu of its prior property interest in the Subject Property, which the Cuban Government confiscated, Plaintiff now owns an interest only in the Certified Claim, which reflects the right to compensation for the value of loss Plaintiff sustained due to the expropriation. Because the Cuban Government's wrongful confiscation extinguishes any property interests a rightful owner previously had in the expropriated property, this Court's holdings in its Motion to Dismiss Orders are at odds with *Glen*

---

[6] Under the Claims Settlement Act, the FCSC is tasked with certifying "the amount and validity of claims by [U.S.] nationals . . . against the Government of Cuba . . . for losses resulting from the nationalization, expropriation, intervention, or other taking of, or special measures directed against, property . . . ." 22 U.S.C. § 1643b(a). In determining the "value of properties, rights, or interests taken, the [FCSC] shall take into account the basis of valuation most appropriate to the property and equitable to the claimant, including but not limited to, (i) fair market value, (ii) book value, (iii) going concern value, or (iv) cost of replacement." *Id.*; *see also* 22 U.S.C. § 1643f(a) ("The Commission shall certify to each individual who has filed a claim under this subchapter the amount determined by the Commission to be the loss or damage suffered by the claimant which is covered by this subchapter.").

*I* and *Glen II*. In particular, the Motion to Dismiss Orders essentially foreclose any recovery under the Act for trafficking because no trafficking could ever possibly occur in a *claimant's* property interest after confiscation — and thus complete extinguishment — of any interest in the property previously owned. Limiting the allowable period of recovery to the term of the underlying property interest, in effect, nullifies Title III entirely because the Cuban Government's confiscation extinguished all of Plaintiff's property interests in the Subject Property. As such, imposing a temporal limitation on Plaintiff's ability to recover damages for trafficking under Title III is untenable, given that, under *Glen I* and *Glen II*, all of Plaintiff's property interests were extinguished at the time of expropriation.

In addition, as explained at length below and in the Orders on Reconsideration in *MSC* and *NCL*, the Court's statutory interpretation of Title III's language in its Motion to Dismiss Orders was incorrect, and its resulting conclusions were contrary to the Act's express purpose. In particular, the Court in the Motion to Dismiss Orders construed the liability provision of § 6082(a)(1)(A) too narrowly — a construction which it has since concluded is not in keeping with the Act. Instead, the Court's ruling in the *Carnival* Order was consistent with Title III's language and purpose. As such, the reasoning in the Motion to Dismiss Orders incorrectly conflated the Certified Claim with Havana Docks' former interests in the Subject Property.

Title III of the LIBERTAD Act states that "any person that . . . traffics in property which was confiscated by the Cuban Government . . . shall be liable to any United States national who owns the claim to such property for money damages . . . ." 22 U.S.C. § 6082(a)(1)(A).[7]

> Finding that the Castro government was "offering foreign investors the opportunity
> to purchase an equity interest in, manage, or enter into joint ventures" involving

---

[7] The amount of money damages available under Title III is the greater of: "(a) the amount certified by the Foreign Claims Settlement Commission under the International Claims Settlement Act of 1949, (b) the amount determined by a special master pursuant to § 6083(a)(2), or (c) the fair market value of the property." *Garcia-Bengochea*, 407 F. Supp. 3d at 1284 n.1 (citing § 6082(a)(1)(A)(i)).

confiscated property in order to obtain "badly needed financial benefit, including hard currency, oil, and productive investment and expertise," 22 U.S.C. § 6081(5), (6), Congress established a civil remedy for any United States national owning a claim to "property" confiscated by the Cuban government after January 1, 1959, against "any person" who "traffics" in such property, *id.* § 6082(a)(1)(A) . . . .

*Havana Club Holding, S.A. v. Galleon S.A.*, 203 F.3d 116, 125 (2d Cir. 2000). Thus, the Act aims "to deter third-party foreign investors from trafficking in confiscated property . . . . [and] [t]his purpose is achieved through the establishment of a new statutory remedy available . . . to 'United States nationals who were the victims of these confiscations . . . [to] deny traffickers any profits from economically exploiting Castro's wrongful seizures.'" *Glen II*, 450 F.3d at 1255 (quoting 22 U.S.C. § 6081(11)); *see also id.* at 1255 n.3 (citing 22 U.S.C. § 6081(5), (6) (defining "'trafficking' in confiscated property" as transactions in "property and assets some of which were confiscated from United States nationals."); 22 U.S.C. § 6081(11) ("United States nationals who were the victims of these confiscations should be endowed with a judicial remedy in the courts of the United States . . . .")).

The LIBERTAD Act provides an expansive definition of "property," stating: "The term 'property' means any property (including patents, copyrights, trademarks, and any other form of intellectual property), whether real, personal, or mixed, and any present, future, or contingent right, security, or other interest therein, including any leasehold interest." 22 U.S.C. § 6023(12)(A). Moreover, the definition of "confiscated" incorporates the Act's broad definition of "property."

> **(4) Confiscated**
> As used in subchapters I and III, the term "confiscated" refers to —
> (A) the nationalization, expropriation, or other seizure by the Cuban Government of ownership or control of property, on or after January 1, 1959 —
>> (i) without the property having been returned or adequate and effective compensation provided; or
>> (ii) without the claim to the property having been settled pursuant to an international claims settlement agreement or other mutually accepted settlement procedure; and

(B) the repudiation by the Cuban Government of, the default by the Cuban Government on, or the failure of the Cuban Government to pay, on or after January 1, 1959 —

> (i) a debt of any enterprise which has been nationalized, expropriated, or otherwise taken by the Cuban Government;
> (ii) a debt which is a charge on property nationalized, expropriated, or otherwise taken by the Cuban Government; or
> (iii) a debt which was incurred by the Cuban Government in satisfaction or settlement of a confiscated property claim.

*Id.* § 6023(4).

"The Castro government has utilized from its inception and continues to utilize . . . confiscation . . . and other forms of terror and repression, as means of retaining power." 22 U.S.C. § 6021(15). "The view long held by the United States is that an alien whose property is expropriated is entitled to 'prompt, adequate, and effective' compensation." *Banco Nacional de Cuba v. Chase Manhattan Bank*, 658 F.2d 875, 888 (2d Cir. 1981). "The wrongful confiscation or taking of property belonging to United States nationals by the Cuban Government, and the subsequent exploitation of this property at the expense of the rightful owner, undermines the comity of nations, the free flow of commerce, and economic development." 22 U.S.C. § 6081(2).

As such, Congress has found that trafficking in confiscated property by foreign investors "undermines the foreign policy of the United States . . . to protect the claims of United States nationals who had property wrongfully confiscated by the Cuban Government," and the transfer of these confiscated properties "would complicate any attempt to return them to their original owners." *Id.* §§ 6081(6)(B), (7). Because "[t]he international judicial system . . . lacks fully effective remedies for the wrongful confiscation of property and for unjust enrichment from the use of wrongfully confiscated property by governments and private entities at the expense of the rightful owners of the property," Congress has sought "to provide protection against wrongful confiscations by foreign nations and their citizens, including the provision of private remedies." *Id.* §§ 6081(8), (10). As such, "[t]o deter trafficking in wrongfully confiscated property, United

States nationals who were the victims of these confiscations [are] endowed with a judicial remedy

in the courts of the United States that would deny traffickers any profits from economically

exploiting Castro's wrongful seizures." *Id.* § 6081(11). In enacting Title III, "Congress intended

'to create a "chilling effect" that [would] deny the current Cuban regime venture capital,

discourage third-country nationals from seeking to profit from illegally confiscated property, and

help preserve such property until such time as the rightful owners can successfully assert their

claim.'" *Havana Club Holding*, 203 F.3d at 125 (citation omitted) (emphasis omitted); *see also* 22

U.S.C. § 6022(6) ("The purposes of this [Act] are . . . to protect United States nationals against

confiscatory takings and the wrongful trafficking in property confiscated by the Castro regime.").

  Accordingly, the LIBERTAD Act defines "traffics" as follows:

> **(13) Traffics**
> (A) As used in [Title] III, and except as provided in subparagraph (B), a person
> "traffics" in confiscated property if that person knowingly and intentionally —
>> (i) sells, transfers, distributes, dispenses, brokers, manages, or otherwise
>> disposes of confiscated property, or purchases, leases, receives, possesses,
>> obtains control of, manages, uses, or otherwise acquires or holds an interest
>> in confiscated property,
>> (ii) engages in a commercial activity using or otherwise benefiting from
>> confiscated property, or
>> (iii) causes, directs, participates in, or profits from, trafficking (as described
>> in clause (i) or (ii)) by another person, or otherwise engages in trafficking
>> (as described in clause (i) or (ii)) through another person,
> without the authorization of any United States national who holds a claim to the
> property.

22 U.S.C. § 6023(13)(A).

  Thus, under the Act, the definition of "traffics" relates to offending conduct in the broad

concept of "confiscated property" — i.e., in any property that was nationalized, expropriated, or

otherwise seized by the Cuban Government to obtain ownership or control, without the property

having been returned or adequate and effective compensation — "without the authorization of any

United States national who holds a claim to the property." *Id.* § 6023(13); *see also id.* § 6023(4).

"[O]ne of the most basic interpretive canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Patel v. U.S. Att'y Gen.*, 917 F.3d 1319, 1326 n.5 (11th Cir. 2019) (quoting *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 824 (2018)). Likewise, in construing a statute, a court is "not allowed to add or subtract words from [the] statute." *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1224 (11th Cir. 2009). Yet, notably absent from the definition of "traffics" is any limitation on the scope of "trafficking" to only a specific "interest in property." Instead, subsection (i) explicitly includes in "traffics" obtaining "an interest in confiscated property," which strongly contradicts any interpretation limiting "traffics" based on a claimant's property interest. 22 U.S.C. § 6023(13)(A)(i). Further contradicting any need to constrict the definition of "traffics" is the fact that each reference to "trafficking" in the substantive provisions of Title III concerns trafficking in "confiscated property," rather than in any "interest in confiscated property."[8] Thus, the Court's narrow construction of "traffics" in its Motion to Dismiss Orders was improper because it inserted "an interest" into each statutory reference to "confiscated property."

Further, as discussed above, Title III states that "any person that . . . traffics in property which was confiscated by the Cuban Government . . . shall be liable to any United States national who owns the claim to such property for money damages . . . ." 22 U.S.C. § 6082(a)(1)(A). Reading the liability language in a way that gives effect to each of the definitions above establishes that the Court's limiting construction was in error. Taken together, these provisions state that "any person that . . . traffics in," *id.* § 6082(a)(1)(A), "any property . . . whether real, personal, or mixed, and

---

[8] *See, e.g.*, 22 U.S.C. § 6081(11) ("To deter trafficking in wrongfully confiscated property . . . ."); *id.* § 6082(a)(1)(A) ("any person that . . . traffics in property which was confiscated by the Cuban Government . . . ."); *id.* § 6082(a)(3)(A) ("Any person that traffics in confiscated property . . . .").

any present, future, or contingent right, security, or other interest therein, including any leasehold interest," *id.* § 6023(12)(A), "which was confiscated by the Cuban Government," *id.* § 6082(a)(1)(A), through "the nationalization, expropriation, or other seizure by the Cuban Government of ownership or control of property . . . . without the property having been returned or adequate and effective compensation provided," *id.* § 6023(4), "shall be liable to any United States national who owns the claim to such property for money damages," *id.* § 6082(a)(1)(A). Further, "such property" in the phrase "the claim to such property" refers to "property which was confiscated by the Cuban Government." *See Such*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/such (last visited Mar. 29, 2020) (defining the adjective "such" as "of the character, quality, or extent previously indicated or implied").

Additionally, the Court's construction of Title III's liability provision in its Motion to Dismiss Orders overlooked the fact that other provisions of the Act refer specifically to "[a]n *interest in property* for which a United States national has a claim certified . . . ." *See, e.g.*, 22 U.S.C. § 6082(a)(5)(D) (emphasis added).[9] "It is well settled that '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is

---

[9] Section 6082(a)(5)(D) states, in full, that:

> An interest in property for which a United States national has a claim certified under title V of the International Claims Settlement Act of 1949 may not be the subject of a claim in an action under this section by any other person. Any person bringing an action under this section whose claim has not been so certified shall have the burden of establishing for the court that the interest in property that is the subject of the claim is not the subject of a claim so certified.

*Id.*; *see also* 22 U.S.C. § 6083(a)(1) ("In any action brought under this subchapter, the court shall accept as conclusive proof of ownership of *an interest in property* a certification of a claim to ownership of *that interest* that has been made by the Foreign Claims Settlement Commission under title V of the International Claims Settlement Act of 1949 . . . ." (emphasis added)). Notably, even the definition of "traffics" under Title III refers to "an interest in property." 22 U.S.C. § 6023(13)(A) ("a person 'traffics' in confiscated property if that person knowingly and intentionally . . . purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds *an interest in confiscated property* . . . ." (emphasis added)).

generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Duncan v. Walker*, 533 U.S. 167, 173 (2001) (quoting *Bates v. United States*, 522 U.S. 23, 29-30 (1997); *Russello v. United States*, 464 U.S. 16, 23 (1983)). Accordingly, limiting the meaning of "traffics in [confiscated] property" to trafficking only in the specific "interest in property for which a United States national has a claim certified" is contrary to the express language used in various parts of the Act. Instead, Title III's plain language creates liability for trafficking in the broadly defined "confiscated property" — i.e., in any property that was nationalized, expropriated, or otherwise seized by the Cuban Government to obtain ownership or control, without the property having been returned or adequate and effective compensation — not in a particular interest in confiscated property.

Further, the Motion to Dismiss Orders essentially concluded that any recovery by Plaintiff on its Certified Claim (i.e., the monetized amount of the loss incurred by Plaintiff from the confiscation) for trafficking in the Subject Property that occurred after the concession was set to expire would allow Havana Docks in effect to recover additional *monetary remedies* beyond those to which it was entitled. The amount of monetary damages memorialized in the Certified Claim, however, is the dollar value of the remainder of the leasehold term that Plaintiff was deprived of, coupled with the value of the other itemized property interests delineated in the Certified Claim, and this discrete amount would not change depending on the timing of the trafficking. *See* 22 U.S.C. §§ 1643, 1643b(a), 1643f(a). Any recovery for the trafficking alleged in this action would not, as the Motion to Dismiss Orders previously held, entitle Plaintiff to recover compensation for an interest in the Subject Property that it did not own, nor would it effectively treat Havana Docks' interest as a fee simple interest. *See MSC*, 2020 WL 59637, at *3-4; *NCL*, 2020 WL 70988, at *4-5. The amount of damages Plaintiff is entitled to recover under the Certified Claim would still be

the certified value of its confiscated interests in the Subject Property that were expropriated, not the value of any other property interests that it did not own. Thus, permitting Havana Docks' cause of action in this case to proceed allows Plaintiff to attempt to recover only the amount of compensation for its interests in the Subject Property that were confiscated.

In the Motion to Dismiss Orders, the Court also took issue with Plaintiff's reading of the Act because it would give Plaintiff "the right to recover compensation for trafficking in property interest[s] that the plaintiff never owned," and determined that recovery was precluded in this case because, as in the context of takings, Havana Docks was only entitled to receive just compensation for the interest in property that was taken. *NCL*, 2020 WL 70988, at *3; *see also MSC*, 2020 WL 59637, at *3. Yet, as explained above, the amount of compensation Plaintiff can recover under the Certified Claim is the value of the losses it sustained *for the property interest confiscated*. *See* 22 U.S.C. §§ 1643, 1643b(a), 1643f(a). However, the issue of the amount of compensation that Plaintiff is entitled to recover in this case is entirely distinct from the issue of the trafficking that creates liability under the Act. Here, the recovery itself "only extend[s] as far as the particular rights from the bundle that [Havana Docks] has acquired." *MSC*, 2020 WL 59637, at *3; *NCL*, 2020 WL 70988, at *3.[10] The liability provision, on the other hand, imposes liability for trafficking in the more broadly defined "confiscated property" — a term that, as discussed above, is not limited solely to the interest Plaintiff originally owned in the Subject Property. Thus, consistent with established takings principles under property law, which require payment of just compensation for the property interest taken, any recovery Plaintiff obtains pursuant to the

---

[10] This is also consistent with the Act's requirement that "the court shall accept as conclusive proof of ownership of *an interest in property* a certification of a claim to ownership of that interest that has been made by the Foreign Claims Settlement Commission under title V of the International Claims Settlement Act of 1949 . . . ." 22 U.S.C. § 6083(a)(1) (emphasis added). Therefore, the recovery amount under the Certified Claim is limited to the particular rights from the bundle that Havana Docks owned.

Certified Claim in this case would be for the value of its confiscated property interests, not for the value of any other interests in the Subject Property that Havana Docks did not own. *See, e.g.*, *United States v. Gen. Motors Corp.*, 323 U.S. 373, 382 (1945) ("When [the government] takes the property, that is, the fee, the lease, whatever he may own, terminating altogether his interest, under the established law it must pay him for what is taken, not more . . . ."); *Alamo Land & Cattle Co., Inc. v. Arizona*, 424 U.S. 295, 304 (1976) ("The measure of damages is the value of the use and occupancy of the leasehold for the remainder of the tenant's term . . . ." (quoting *United States v. Petty Motor Co.*, 327 U.S. 372, 381 (1946))).

In sum, the *MSC* Order and the *NCL* Order that Royal Caribbean contends support its entitlement to judgment on the pleadings in this case were incorrectly decided and were premised upon errors of fact and law. Thus, Royal Caribbean's reliance on the reasoning in the Motion to Dismiss Orders is misplaced. Further, the Court concludes that Havana Docks has stated a facially plausible claim to relief under Title III because the Complaint alleges that Plaintiff was the rightful owner of the Subject Property, which was wrongfully confiscated by the Cuban Government without adequate compensation, it owns a Certified Claim memorializing its interest in the Subject Property, and Royal Caribbean trafficked in the Subject Property beginning in April 2017 without proper authorization. *See* ECF No. [1] ¶¶ 7-16. Because Plaintiff has sufficiently alleged a plausible claim to relief under Title III, Royal Caribbean's Motion for Judgment on the Pleadings is denied.

### B. Motion for Leave to Amend

Turning to Havana Docks' Motion for Leave to Amend, Plaintiff requests the Court's leave to file its Amended Complaint to further clarify its former interests in the Subject Property and the scope of its Certified Claim, and to allege additional facts that the Court has not yet considered.

Havana Docks argues that the Amended Complaint will cure the deficiencies discussed in the Motion to Dismiss Orders and will sufficiently allege facts that further support a claim under Title III, such that: (1) Under the Eleventh Circuit's opinion in *Glen II*, the Certified Claim itself is the property interest that remains after the confiscation of the Subject Property and this interest is not time limited; (2) Plaintiff's concession agreement included a 99-year leasehold interest that was cut short by 44 years due to the confiscation, and therefore never expired; (3) The concession agreement included an indemnity right to be paid by the Cuban Government to Havana Docks that was triggered by expropriation, which was not time limited and was included in the valuation of the loss in the Certified Claim; and (4) The Certified Claim recognizes ownership of property interests beyond the concession itself and the FCSC included the losses of these other property interests in its valuation. In addition, Havana Docks contends that good cause exists to permit amendment after the Court's deadline because Plaintiff moved to amend as soon as it could after the Court issued its Motion to Dismiss Orders in *MSC* and *NCL*, and that amendment is also proper under Rule 15.

In response, Royal Caribbean argues that the Motion for Leave to Amend should be denied because the requested amendment is untimely, as it was filed after the Court's deadline to amend set forth in the Scheduling Order in this case had expired, and because Plaintiff has failed to establish that good cause exists for the delay because it has known of the additional facts alleged in the Amended Complaint since it initiated this action. Royal Caribbean further argues that permitting amendment here would be futile.

Havana Docks replies that good cause exists to permit the amendment because it diligently pursued amendment as soon as reasonably possible, given the circumstances of this case and Havana Docks' three other pending cases, and Plaintiff has no dilatory motives for seeking the

amendment. Moreover, Plaintiff contends that granting leave to file its Amended Complaint would not be futile because the Amended Complaint sufficiently alleges additional facts clarifying the scope and nature of its property interests in the Subject Property and its Certified Claim, which further establish a viable claim for relief under Title III.

As an initial matter, the Court issued an Order Setting Trial and Pre-trial Schedule, Requiring Mediation, and Referring Certain Matters to Magistrate Judge, which set the deadline to file all motions to amend pleadings by January 24, 2020. ECF No. [21] ("Scheduling Order"). Plaintiff filed its Motion for Leave to Amend after the Scheduling Order's stated deadline on February 12, 2020.[11] Thus, because Plaintiff filed its Motion for Leave to Amend after the Scheduling Order's amendment deadline, the Court must first determine whether, under Rule 16, good cause exists for Plaintiff's delay in seeking the amendment. *See Sosa*, 133 F.3d at 1418 n.2 ("[W]hen a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused.").

A court's scheduling order "may be modified only 'upon a showing of good cause.' Fed. R. Civ. P. 16(b). This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Id.* (quoting Fed. R. Civ. P. 16(b)(4); Fed. R. Civ. P. 16 advisory committee's note); *see also Smith v. Sch. Bd. of Orange Cty.*, 487 F.3d 1361, 1366-67 (11th Cir. 2007) (holding that "where a party files an untimely motion to amend, [courts] must first determine whether the party complied with Rule 16(b)'s good cause requirement," before considering whether "justice so requires" allowing amendment). If the party seeking relief "was not diligent, the [good cause] inquiry should end." *Sosa*, 133 F.3d at 1418 (quoting *Johnson*, 975 F.2d at 609).

---

[11] Havana Docks did not move to extend the deadline to amend the pleadings before the expiration of the January 24, 2020, deadline.

Therefore, when a motion for leave to amend a pleading is filed after the deadline set in a court's scheduling order, the court employs a two-step analysis. *Id.* at 1419. First, the movant must demonstrate good cause under Rule 16(b). Good cause exists when the deadline could not "be met despite the diligence of the party seeking the extension." *Id.* at 1418 (quoting Fed. R. Civ. P. 16 advisory committee's note). Courts consider three factors in assessing diligence: (1) whether the movant failed to ascertain facts prior to filing the pleading or failed to acquire information during the discovery period, (2) whether the information supporting the proposed amendment was available to the movant, and (3) whether the movant delayed in requesting leave to amend even after acquiring the information. *See id.* at 1419. Second, if the movant demonstrates good cause, the court proceeds to determine whether an amendment to the pleadings is proper under Federal Rule of Civil Procedure 15(a). *Id.*

Here, the Court concludes that Havana Docks has sufficiently established the requisite good cause and diligent conduct under Rule 16 to excuse the two-and-a-half-week delay in seeking the Court's leave to amend after the expiration of the amendment deadline.[12] Specifically, after the Court reconsidered its *Carnival* Order in the Motion to Dismiss Orders, "Havana Docks diligently pursued amendment, which required the development of legal strategy to ensure consistency among Havana Docks' four cases before this Court, factual research, and intermittent absences by Havana Docks' counsel due to personal and familial medical needs . . . ." ECF No. [32] at 13; *see also* ECF No. [27] (describing Plaintiff's efforts to confer on how to proceed to ensure consistent positions across all four of Havana Docks' Title III cases, and explaining that Plaintiff's response

---

[12] While Royal Caribbean argues that Plaintiff could have timely alleged the additional facts set forth in the Amended Complaint but failed to do so, the Court is cognizant of the fact that Havana Docks could not have anticipated that its previously sufficient allegations in *Carnival* would fail in this case. Thus, the Court finds that Plaintiff's failure to clarify the nature and scope of its property interests under these circumstances is excusable.

to the Motion for Judgment on the Pleadings would depend on the course of action taken in *Carnival*, *MSC*, and *NCL*). Prior to the Court's Motion to Dismiss Orders, Plaintiff had no reason to seek amendment because the Court had expressly found the almost-identical allegations in *Carnival* to be sufficient. Further, on January 15, 2020, Havana Docks and Royal Caribbean jointly moved to stay discovery pending the resolution of Royal Caribbean's Motion for Judgment on the Pleadings, and agreed that they would jointly request an amended scheduling order extending the Court's pre-trial deadlines if the Court denied Royal Caribbean's Motion for Judgment on the Pleadings, ECF No. [28], which the Court granted, ECF No. [30]. Ultimately, Plaintiff's Motion for Leave to Amend was filed over two-weeks after the Court's deadline to amend.

Upon consideration, the Court is unpersuaded that Havana Docks unduly delayed or exhibited a lack of diligence in seeking the Court's leave to amend here. Instead, the Court finds that Plaintiff has established the necessary diligence in seeking the amendment after the Court issued its Motion to Dismiss Orders. *See, e.g.*, *Virciglio v. Work Train Staffing LLC*, 674 F. App'x 879, 885 (11th Cir. 2016) (holding that district court "clearly" did not abuse its discretion in finding good cause and granting plaintiff's motion for leave to amend where plaintiff did not have information necessary to assert the amendment in spite of diligence until after the scheduling order amendment deadline had expired).[13] Accordingly, good cause exists in this case to permit the untimely motion. *Cf. Lucas v. USAA Cas. Ins. Co.*, 716 F. App'x 866, 871 (11th Cir. 2017) ("This

---

[13] *See also Southpoint Condo. Ass'n, Inc. v. Lexington Ins. Co.*, No. 19-cv-61365, 2020 WL 639400, at *4 (S.D. Fla. Feb. 11, 2020) (good cause is satisfied where the motion to amend was brought within weeks of a party discovering the documents and records at issue); *Allegheny Cas. Co. v. Archer-W./Demaria Joint Venture III*, No. 8:13-CV-128-T-24-TGW, 2014 WL 10915507, at *3 (M.D. Fla. June 16, 2014) (finding good cause for delay in seeking leave to amend affirmative defenses where the information was revealed in discovery after the answer and affirmative defenses had initially been filed and the motion was made within four weeks of learning the new information).

is not a situation where the plaintiffs acted with diligence and still could not meet the scheduling order's deadlines.").[14]

Turning to the question of whether amendment is proper here, the Court concludes that allowing Plaintiff to file its Amended Complaint is warranted because, as stated above, Plaintiff reasonably relied on the Court's holding in the *Carnival* Order in gauging the sufficiency of the allegations plead in the instant action.[15] Additionally, the Court disagrees with Royal Caribbean regarding the futility of permitting Plaintiff to file its Amended Complaint, based on the analysis set forth above and the discussion in the Court's Orders on Reconsideration in *MSC* and *NCL* explaining the errors of fact and law in the Court's Motion to Dismiss Orders. Instead, the Court finds that Havana Docks can sufficiently allege a claim under Title III, in light of the Court's

---

[14] *See Dixon v. Blanc*, 796 F. App'x 684, 689 (11th Cir. 2020) ("[T]here is no good cause when the failure to comply with the district court's schedule results from a lack of diligence in pursuing the claim." (citing *Sosa*, 133 F.3d at 1419)); *see also Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1232 (11th Cir. 2008) (same); *Zhang v. Royal Caribbean Cruises, Ltd.*, No. 19-20773-CIV, 2020 WL 1472302, at *2 (S.D. Fla. Mar. 26, 2020) ("[D]iligence is the key to satisfying the good cause requirement." (quoting *De Varona v. Discount Auto Parts, LLC*, 285 F.R.D. 671, 672-73 (S.D. Fla. 2012))); *Flexfunds ETP, LLC v. MarkETP, LLC*, No. 16-24504-CIV, 2017 WL 4882530, at *2 (S.D. Fla. Oct. 30, 2017) ("In order to demonstrate good cause that would support untimely amendment of a complaint, the plaintiff must demonstrate diligence."); *Hayes v. Moon*, No. 16-cv-80365-KAM, 2016 WL 11031743, at *1 (S.D. Fla. Nov. 16, 2016) ("[T]o demonstrate diligence under Rule 16's good cause standard the movant still must show that it was diligent in seeking the amendment once it became apparent that it could not comply with the scheduling order." (citing *Dag Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 106 (D.D.C. 2005))).

[15] As the Supreme Court has explained,

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is . . . inconsistent with the spirit of the Federal Rules.

*Foman*, 371 U.S. at 182 (citation omitted).

discussion with regard to the express language and purpose of the Act and the additional allegations in the Amended Complaint regarding Havana Docks' various property interests. Plaintiff's Amended Complaint would also not fail as a matter of law because, contrary to the Court's previous conclusion in its Motion to Dismiss Orders, the liability provision of Title III does not contain any temporal limitation. Likewise, the Court finds the allegations in the Amended Complaint sufficient to assert a claim for relief under Title III because Plaintiff has adequately alleged that it owned a Certified Claim to an interest in the Subject Property that was wrongfully confiscated without compensation and that Royal Caribbean knowingly trafficked in the confiscated Subject Property without the authorization of a claimant. ECF No. [32-1] at 4-10, ¶¶ 6-28.[16] Thus, allowing Havana Docks to file its Amended Complaint would not be futile in this case. *See Bryant*, 252 F.3d at 1164 (concluding that the district court's finding of futility "ignore[d] the fact that the district court earlier had found the complaint sufficient, thus justifying, until [the Eleventh Circuit's] opinion, the plaintiffs' belief that they did not need to include any further

---

[16] *See Glen II*, 450 F.3d at 1255 ("The Helms-Burton Act refers to the property interest that former owners of confiscated property now have as ownership of a 'claim to such property.' When (or if) the portion of Title III that allows private litigants to bring lawsuits becomes effective, actions brought pursuant to the new statutory scheme would be actions brought 'on a claim to the confiscated property' against traffickers in the property." (citations omitted)); *Glen I*, 365 F. Supp. 2d at 1269-70 ("Title III permits any U.S. national 'who owns a claim to such [confiscated] property for money damages' to sue those who traffic in such property." (citation omitted)); *Garcia-Bengochea*, 407 F. Supp. 3d at 1288 ("The Helms-Burton Act also requires the plaintiff to show that he 'owns the claim' to the confiscated property." (quoting § 6082(a)(1)(A))); *Gonzalez v. Amazon.com, Inc.*, No. 19-23988-CIV, 2020 WL 1169125, at *2 (S.D. Fla. Mar. 11, 2020) (discussing the insufficiency of allegations regarding an actionable ownership interest); *see also Havana Club Holding*, 203 F.3d at 125 ("Finding that the Castro government was 'offering foreign investors the opportunity to purchase an equity interest in, manage, or enter into joint ventures' involving confiscated property in order to obtain 'badly needed financial benefit, including hard currency, oil, and productive investment and expertise,' Congress established a civil remedy for any United States national owning a claim to 'property' confiscated by the Cuban government after January 1, 1959, against 'any person' who 'traffics' in such property, and broadly defined 'property' . . . ." (citations omitted)); *Lamb v. ITT Corp.*, No. 8:09CV95, 2010 WL 376858, at *4 (D. Neb. Jan. 26, 2010) (Title III "creates a civil cause of action for damages in the amount that was certified by the Foreign Claims Settlement Commission." (footnote omitted)).

Case No. 19-cv-23590-BLOOM/Louis

allegations in the Amended Complaint"). As such, Havana Docks' Motion for Leave to Amend is granted.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Royal Caribbean's Motion for Judgment on the Pleadings, **ECF No. [26]**, is **DENIED**.

2. Plaintiff's Motion for Leave to Amend, **ECF No. [32]**, is **GRANTED**. Plaintiff must separately refile its Amended Complaint, **ECF No. [32-1]**, **by no later than April 27, 2020**.

3. The stay of discovery is **LIFTED**.

**DONE AND ORDERED** in Chambers at Miami, Florida on April 17, 2020.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record