# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. 19-23590-CIV-BLOOM/Louis

HAVANA DOCKS CORPORATION,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

    Defendant.

_____/

### HAVANA DOCKS' MOTION TO COMPEL PRODUCTION
### OF EVIDENCE WITHHELD UNDER THE ATTORNEY-CLIENT PRIVILEGE

Through its twenty-nine affirmative defenses, Defendant Royal Caribbean Cruises, Ltd. injects a host of issues into this case, including its knowledge of the LIBERTAD Act and regulations issued by the Office of Foreign Assets Control (OFAC). (D.E. 59.) And through its two privilege logs, each exceeding 1,000 entries, Royal withholds substantial documents bearing on that issue.[1] Eleventh Circuit precedent, however, is clear that where a party injects its knowledge of the law, as Royal does, it waives privilege over the attorney advice informing that knowledge.[2] The Court should order Royal to produce withheld evidence reflecting its knowledge of the LIBERTAD Act and OFAC regulations.

---

[1]     **Exhibit A**, Royal's First Privilege Log (Jan. 20, 2021); **Exhibit B**, Royal's Second Privilege Log (Feb. 8, 2021).

[2]     *Cox v. Adm. U.S. Steel & Carnegie*, 17 F.3d 1386, 1418-20, 1423 (11th Cir. 1994)

Royal also withholds over 700 exchanges with COMAR S.A., an agency of the Cuban Government, pertaining to Royal's contract negotiations with the Cuban Government, a circumstance where no reasonable expectation of confidentiality exists. Among the withheld records are reports and minutes of meetings with Cuban Government agencies that were drafted by COMAR as Royal's liaison to the Cuban Government. These documents do not qualify as legal advice and are not privileged. The Court should order Royal to produce its exchanges with COMAR.

## **LEGAL STANDARD** [3]

The attorney-client privilege applies to "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1262 (11th Cir. 2008). In the Eleventh Circuit, the party invoking the privilege "must establish":

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is (the) member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

---

[3]   Federal common law of privilege applies to this suit because it arises under federal law. *See Hancock v. Hobbs*, 967 F.2d 462, 466 (11th Cir. 1992); Fed. R. Evid. 501.

*United States v. Fulwood*, 569 F. App'x 691, 694 (11th Cir. 2014); *United States v. Noriega*, 917 F.2d 1543, 1550 (11th Cir. 1990) (same).[4]

## ARGUMENT

**I. Royal Waived Privilege Over Documents and Communications Reflecting Its Knowledge of the LIBERTAD Act and OFAC Regulations.**

Absence of waiver is an element of the attorney-client privilege that must be established by the privilege's proponent. *See Fulwood*, 569 F. App'x at 694; *Noriega*, 917 F.2d at 1550; *MCZ/Centrum Flamingo II, LLC v. City of Miami Beach*, No. 08-cv-22419, 2009 WL 10701007, *3 (S.D. Fla. Aug. 6, 2009) (Altonaga, J.) (for "at-issue waiver," the "burden of establishing nonwaiver' rests on the party seeking to assert a claim of privilege," and collecting cases).

Waiver may occur expressly or by implication. *See Cox v. Adm. U.S. Steel & Carnegie*, 17 F.3d 1386, 1414 (11th Cir. 1994). With respect to the latter, the rationale of the doctrine of waiver by implication is that "[a] defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *Id.* at 1417. It "reflects the position that the attorney-client privilege 'was intended as a shield, not a sword.'" *Id.* (quoting *GAB Bus. Servs., Inc. v. Syndicate 627*, 809 F.2d 755, 762 (11th Cir. 1987). Thus, where a party "injects into the case an issue that in fairness requires an examination of otherwise protected

---

[4] "The attorney-client privilege 'is not a favored evidentiary concept in the law since it serves to obscure the truth, and it should be construed as narrowly as is consistent with its purpose.'" *United States v. Suarez*, 820 F.2d 1158, 1160 (11th Cir. 1987), *cert. denied*, 484 U.S. 987 (1987).

3

communications," the party "waives the privilege over those communications." *Id.* at 1419. Courts find waiver by implication:

> (1) When a client testifies concerning portions of the attorney-client communication, (2) when a client places the attorney-client relationship directly at issue, and (3) when a client asserts reliance on an attorney's advice as an element of a claim or defense.

*Id.* at 1418 (alterations and citation omitted).

In *Cox*, the Eleventh Circuit further held that "[w]here a party asserts that he believed his actions to be lawful, he waives the attorney-client privilege as to what his attorney told him about the legality of his actions." *Id.* at 1418-20, 1423.

> All of these established exceptions to the rules of privilege have a common denominator; in each instance, the party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would have been manifestly unfair to the opposing party.

*Id.* (alteration omitted; quoting *Pitney-Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 447 (S.D. Fla. 1980) (Aronovitz, J.); *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)). "In such cases, 'there is a serious danger that the privilege-holder's assertions are false or misleading.'" *Siegmund v. Xuelian Bian*, 2018 WL 3725775, at *11 (S.D. Fla. Aug. 1, 2018) (Louis, Mag. J.); *see also United States v. Woodall*, 438 F.2d 1317, 1324-26 (5th Cir. 1970) (en banc).

A "defendant need not raise an affirmative defense to inject a new issue into the case, although it frequently occurs that way." *Cox*, 17 F.3d. at 1419 (citing *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987)).

Nor is the explicit assertion of advice of counsel defense a pre-requisite to finding implied waiver. *Id.* at 1418; *Barker ex rel. United States v. Columbus Reg.*

*Healthcare Sys., Inc.*, 2014 WL 4287744, at *4 (M.D. Ga. Aug. 29, 2014); *United States v. Fresenius Med. Care Holdings, Inc.*, 2014 WL 11517840, at *2 (N.D. Ga. Feb. 21, 2014).

Rather, the operative question is whether a party "injected the issue of its knowledge of the law into the case and thereby waived the attorney client privilege." *Cox*, 17 F.3d at 1419. Where a party injects its beliefs about the legality of its conduct, reliance on advice of counsel as the basis of those beliefs is presumed. *See, e.g., In re Namenda Direct Purchaser Antitrust Litig.*, 2017 WL 2226591, at *5 (S.D.N.Y. May 19, 2017) ("Implied reliance on advice of counsel sufficient to waive privilege is confined to situations involving a party's state of mind concerning a question of law, such as the party's belief as to the lawfulness of its conduct.") (citation omitted); *Maar v. Beall's, Inc.*, 237 F. Supp. 3d 1336, 1340 (S.D. Fla. 2017) (Middlebrooks, J.) ("It is the articulation of a claim or defense explicitly *relying* on the litigant's subjective thinking, as potentially influenced by advice from legal counsel, that activates the doctrine of implied waiver.").[5]

---

[5]     Last year, the Eleventh Circuit affirmed a district court's order denying an implied waiver argument, in part, because the defendants "did not assert an advice of counsel defense" and did not put forth an "offensive, selective waiver of privilege that entitles [plaintiff] to discover the privileged material." *Knox v. Roper Pump Co.*, 957 F.3d 1237, 1248-49 (11th Cir. 2020). *Knox* is materially distinguishable. Unlike this case, *Knox* did not involve a party asserting its reliance on Government representations, and then withholding as privileged the evidence that forms the foundation of its knowledge of the law. *Cox*, 17 F.3d at 1418, 1423; *In re Namenda*, 2017 WL 2226591, at *5 (reliance on advice of counsel is presumed where party injects its knowledge of the law).

**Royal's Government Reliance Defense**

Royal asserts through its Twenty-Sixth Defense that Havana Docks' "claim is barred because Royal Caribbean reasonably relied upon the continuous and serial suspension of the [LIBERTAD] Act." (D.E. 59 at 9.) In its Third Defense, Royal invokes the Fifth Amendment's Due Process Clause, asserting immunity from liability under the LIBERTAD Act because:

> Plaintiff is seeking to hold Royal Caribbean liable for conduct that was authorized by the Office of Foreign Assets Control, U.S. Department of Treasury, under the Cuban Assets Control Regulations ("CACR"), 31 CFR Part 515, and by the Bureau of Industry and Security, U.S. Department of Commerce, under the Export Administration Regulations, 13 CFR Part 730.

(*Id.* at 5.)

In the context of a government reliance defense, like the one Royal asserts, the doctrine of waiver by implication applies to prevent the unfairness that would otherwise ensue from prohibiting discovery of attorney-client communications:

> These defenses do not solely relate to the 'objective' representations of [the Department of Energy (DOE)] but directly concern Exxon's subjective interpretation and understanding of those representations; *i.e.*, Exxon's corporate state of mind. As in the *Connell* case, Exxon's affirmative defenses necessarily revolve around whether Exxon did, in fact, primarily or solely rely upon a particular DOE regulation or communication when the company made its pricing decisions. Thus, the only way to assess the validity of Exxon's affirmative defenses, voluntarily injected into this dispute, is to investigate attorney-client communications where Exxon's interpretation of various DOE policies and directives was established and where Exxon expressed its intentions regarding compliance with those policies and directives. There is no other reasonable way for plaintiff to explore Exxon's corporate state of mind, a consideration now central to this suit.

*United States v. Exxon Corp.*, 94 F.R.D. 246, 247-50 (D.D.C. 1981); *McLaughlin v. Lunde Truck Sales, Inc.*, 714 F. Supp. 916, 918-919 (N.D. Ill. 1989) ("the defendants'

defense in the instant case depend on whether the defendants relied upon a particular DOL representation or action. Consequently, the primary way to assess the validity of this reliance is to investigate attorney/client communications where the defendants' interpretations of DOL actions were established.").[6]

Every member of Royal's joint defense group has pled these government reliance defenses, which inject Royal's knowledge of the LIBERTAD Act and OFAC regulations. (*See* MSC Case, 19-cv-23588, D.E. 133 at 15 (S.D. Fla); *Norwegian* Case, 19-cv-23591, D.E. 107 at 18; *Carnival* Case, 19-cv-21724, D.E. 160 at 18.) In fact, two members of Royal's joint defense group have argued that these defenses preclude liability in this case because the cruise lines did not know that their conduct on the Subject Property violated the LIBERTAD Act, because the cruise lines believed that

---

[6] *Southwire Co. v. Essex Grp., Inc.*, 570 F. Supp. 643 (N.D. Ill. 1983) ("Even were we to view Essex' 'objective' evidence as entitling it to an inference or prima facie showing of reliance, fairness dictates that Southwire be permitted to rebut the showing. The supposed 'objective'—'subjective' dichotomy is in a way illusory. Essex' 'objective' evidence, which may include proof of delay, unfulfilled threats of suit and the like, is merely evidence which permits a trier of fact to infer that Essex actually relied on those factors. If Southwire has evidence that Essex actually relied on something other than Southwire's actions or silence, that serves to undercut the inference that Essex seeks to have drawn from its 'objective' evidence. In short, Essex asserts that it relied on Southwire's delay in building the four plants; Southwire says that Essex relied on something else. What Essex is arguing here is that Southwire is not entitled to prove what Essex actually relied on, even though the court should be entitled to infer actual reliance from Essex' own proof. The unfairness of Essex' position is manifest.").

*See also Blue Lake Forest Prods., Inc. v. United States*, 75 Fed. Cl. 779, 784-86 (2007); *Minebea Co., Ltd. v. Papst*, 355 F. Supp. 2d 518, 522-25 (D.D.C. 2005) (party's characterization of reliance defense as "good faith (as in *Exxon*), actual, justifiable or reasonable" is irrelevant to the at-issue waiver analysis).

their conduct complied with that statute and OFAC regulations, and because the cruise lines relied on Government representations and encouragement to travel to Cuba. (*MSC* Case, D.E. 24 at 2-3, 12-13, 16, 18-19; D.E. 39 at 10; D.E. 69 at 7-8, 18; D.E. 77 at 6-7; *NCL* Case, D.E. 66 at 4, 12-13, 16-20; D.E. 78 at 2, 10, 11, 13.)

If Royal is raising these same defenses, then it has injected its knowledge of the law and waived attorney-client privilege over the evidence that forms the basis of its understanding of the LIBERTAD Act and OFAC regulations. *Cox*, 17 F.3d at 1418-20, 1423 (where a party injects its knowledge of the law, it waives privilege over what its attorney told it about the law).

The Court should order Royal to produce that evidence so that Havana Docks may discover whether Royal <u>actually</u> relied on the LIBERTAD Act's suspension in deciding to operate on confiscated property (D.E. 59 at 9) and whether it truly believed that regulations issued by OFAC would insulate it from liability under Title III.

## Royal's State of Mind Defense

For its Twenty-Seventh Defense, Royal asserts that "Plaintiff's claim is barred because Royal Caribbean did not knowingly and intentionally traffic in the Subject Property." (D.E. 59 at 9.) Like the government reliance defense, this defense is common among all members of Royal's joint defense group, one of which described it as premised on the cruise lines' 'lawful intent' with respect to travel to Cuba. (*See Norwegian* Case, at D.E. 31 at 5-11; D.E. 41 at 2-6, D.E. 107 at 16 (Norwegian's "intent was at all times lawful").) This is a form of the defense of good faith. *See United*

8

*States v. Morris*, 20 F.3d 1111, 1115-16 (11th Cir. 1994) (for defense of good faith, "intent may be negated by a good-faith misunderstanding of the law or a good-faith belief that one is not violating the law, regardless of whether or not the belief is reasonable").

If Royal's state of mind defense is like Norwegian's—that Royal cannot be found to have acted intentionally because of a claimed belief in the legality of its conduct on the Subject Property—then Royal has injected its knowledge of the law and waived privilege, notwithstanding its attempt to artfully plead around the phrase "good faith." *Cox*, 17 F.3d at 1418-20, 1423 (where party injects its knowledge of the law, it waives privilege over what its attorney told it about the legality of its conduct); *Abromavage v. Deutsche Bank Secs., Inc.*, 2019 WL 6790513, **3-4 (S.D.N.Y. Dec. 11, 2019) ("While [defendant's] answer does not plead 'advice of counsel' or 'good faith' using those words, [defendant] is necessarily relying, to some extent, on the actions and recommendations of its in-house counsel to prove that it adhered to anti-retaliation law and policies in good faith," and finding waiver); *Scott v. Chipotle Mexican Grill, Inc.*, 67 F. Supp. 3d 607, 614-17, n.6 (S.D.N.Y. 2014) (similar).[7]

If Royal intends to use its Twenty-Seventh Defense to present evidence to a finder of fact about its intentions and beliefs in the legality of its conduct under the LIBERTAD Act and OFAC regulations, then it cannot invoke the privilege to prevent

---

[7] Moreover, Royal's Twenty Seventh Defense, as pled, is not an affirmative defense at all. *Compare* D.E. 59 at 9, *with In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) ("A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense.").

9

Havana Docks from discovering the evidence that forms the foundation for those intentions and beliefs. *Cox*, 17 F.3d at 1418-20, 1423. Havana Docks therefore respectfully requests that the Court order Royal to produce withheld records reflecting its knowledge of and intent to comply with the LIBERTAD Act and OFAC regulations.

## II. Royal's Communications with the Cuban Government Are Not Privileged.

### A. Royal's Expectation of Confidentiality Over its Communications with the Cuban Government is Not Reasonable.

Royal also asserts privilege over its communications with COMAR, S.A. ("COMAR"). COMAR is not a private law firm; it is an agency of the Cuban Government that specializes in maritime law and represents Aries Transportes, S.A. ("Aries"), the Cuban Government agency that operates the Subject Property. (**Exhibit C,** Dep. of L. Vidal from *Norwegian* Case, at 19:8-20 (Dec. 4, 2020); **Exhibit D,** Dep. of Norwegian Cruise Line from *Norwegian* Case at 81:23-82:4 (Nov. 5, 2020).) In support of its privilege assertion, Royal provided the declaration of its Senior Associate In-House Counsel, Mayte Cabada. (**Exhibit E**, Decl. of M. Cabada.) Ms. Cabada states that "COMAR provided legal advice to Royal Caribbean in connection with Royal Caribbean's activities in Cuba, including representing Royal Caribbean during Royal Caribbean's dealings with Aries Transportes S.A., Empresa Consignataria Mambisa, and Havanatur." (*Id.* at ¶ 8.) Evidence in Havana Docks' other cases reveals that the Cuban Government appointed COMAR as the cruise lines' representative in connection with their negotiations with the Cuban

10

Government. (**Exhibit F**, Dep. of G. Israel, *Carnival* Case (Dec. 3, 2020) at 251:8-20.)[8]

In effect, Royal is asserting attorney-client privilege over communications with a department of the Cuban Government (COMAR), relating to its contract negotiations with other agencies of the Cuban Government (Aries, Mapor and Cubanacan), where both parties to the negotiation are represented by the same Cuban Government attorneys.

The attorney-client privilege only applies to confidential communications. *Bogle v. McClure*, 332 F.3d 1347, 1358 (11th Cir. 2003). "To determine if a particular communication is confidential and protected by the attorney-client privilege, the privilege holder must prove the communication was '(1) intended to remain confidential and (2) under the circumstances was *reasonably* expected and understood to be confidential.'" *Id.* (quoting *United States v. Bell*, 776 F.2d 965, 971 (11th Cir. 1985)). "Thus the relevant inquiry is not whether [Royal] expected [its] discussions with [COMAR] to remain confidential, but rather, whether [its] expectation was <u>reasonable</u>." *Bell*, 776 F.2d at 971 (emphasis added). And where a party knew or should have known of grounds to question the loyalty of the person with whom it was conversing, the reasonableness of a party's expectation of

---

[8]     *See also Norwegian* Case, 19-cv-23591 (S.D. Fla.) at D.E. 132-4 at 251:8-20.

11

confidentiality in that communication is doubtful. *United States v. Melvin*, 650 F.2d 641, 645-46 (5th Cir. Unit B 1981).[9, 10]

Although Ms. Cabada generally claims confidence over Royal's communications with COMAR (**Exhibit E** at ¶¶ 6, 7, 10), under the circumstances, Royal's expectation of confidentiality was not reasonable. For one, a private party does not have an expectation of confidentiality over its conversations with attorneys of a communist government, and Havana Docks has found no authority to the contrary. Havana Docks has also not found any court ruling finding confidential a party's communications with an attorney who represented both sides of a negotiation. If anything, case law appears to support the opposite. *Cf. Trinity Amb. Serv., Inc. v. G&L Amb. Serv., Inc.*, 578 F. Supp. 1280, 1285 (D. Conn. 1984) ("The expectation that information conveyed to a co-party's counsel will be held in confidence from that attorney's client is no more plausible than the expectation that an attorney concurrently representing parties in the execution of a joint venture or franchise agreement will keep information relayed to him by one party secret from the other."). Yet Royal's expectation of confidentiality is even lower than that here, where its

---

[9]   "In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982) we adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981." *Bell*, 776 F.2d at 971 n.14.

[10]   "In their actual decisions, courts almost invariably inquire into whether a reasonable person would have expected the communication to reach only other privileged persons in the circumstances and not into the actual, subjective state of mind of the communicating person. That is the approach stated in the section." Restatement (Third) of the Law Governing Lawyers § 71 Attorney-Client Privilege— "In Confidence," Reporters Note to Comment B (2020).

12

attorneys and negotiating opponents are all departments of the communist Cuban Government. Indeed, other cruise lines were so concerned about COMAR's inherent conflict that they retained separate outside Cuban counsel, not associated with the Cuban Government, to serve as their independent legal advisers. (**Exhibit G**, Dep. of A. Perez, *Carnival* Case (Dec. 23, 2020) at 44:6-24.)[11]

Because Royal has not proven a <u>reasonable</u> expectation of confidentiality over its communications with COMAR, the Court should overrule its asserted privilege over exchanges with that entity. *Bogle*, 332 F.3d at 1358; *Bell*, 776 F.2d at 971; *Melvin*, 650 F.2d at 645-46.

### B. Communications About Royal's Business Negotiations and Meetings with the Cuban Government are Not Privileged.

Royal has withheld as privileged substantial communications with COMAR pertaining to Royal's business negotiations and meetings with the Cuban Government. (*See* **Exhibit E** at ¶ 8 (COMAR represented Royal during its "dealing with Aries Transportes S.A., Empresa Consignataria Mambisa, and Havanatur," all agencies on the Cuban Government); **Exhibit H**, Log of Withheld COMAR Communications.)

"Only confidential communications conveyed for the primary purpose of rendering legal advice are protected by the attorney-client privilege; '<u>business advice which is unrelated to legal advice is not protected by the attorney-client privilege even when it is between an attorney and a client</u>.'" *Kaplan v. Nautilus Ins. Co.*, 2018 WL 6445886, *2 (S.D. Fla. Sept. 17, 2018) (Louis, Mag, J.) (emphasis added);

---

[11] *See also Norwegian* Case, 19-cv-23591 (S.D. Fla.) at D.E. 132-5 at 44:6-24.

13

*Siegmund*, 2018 WL 3725775, at *5. "Where one consults an attorney not as a lawyer but as a friend or as a business adviser or banker, or negotiator the consultation is not professional nor the statement privileged." *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998) (alterations omitted; quoting 1 MCCORMICK ON EVIDENCE § 88, at 322–24 (4th ed.1992)).[12]

As demonstrated by Ms. Cabada's declaration, COMAR in large part appears to have acted as Royal's business agent, business adviser and conduit to the Cuban Government. (**Exhibit E** at ¶ 8.) Royal's privilege log reflects the same and indicates that Royal has improperly withheld a number of communications pertaining to its meetings with agencies of the Cuban Government, including minutes of these meetings that were transcribed by COMAR.[13] Because these documents do not involve legal advice, they are not privileged and the Court should order them

---

[12] "Where in-house counsel is acting as a business negotiator, general business agent, preparer of tax returns, lobbyist, public relations strategist, or press agent, the privilege does not apply. That is, where businesses use their attorneys for non-legal purposes to promote the interests of the corporation, their communications are not protected by the privilege." John K. Villa, *The Attorney-Client Privilege and In- House Corporate Counsel*, 1 Corporate Counsel Guidelines § 1:16 (2020) (alteration and footnotes omitted; collecting cases).

[13] *See, e.g.*, **Exhibit H,** Log of Withheld COMAR Communications at Row Entries 413 (memo of meeting with Royal and Cuban Government), 447 (preparation for meeting with Aries), 477 (draft letter to Cuban Ministry of Transport (Mitrans)), 478 (same) 518 (Aries meeting minutes drafted by COMAR), 586 (letter to the President of Aries, Albertini), 588 (same), 598 (draft letter to Cuba's Director of Maritime Administration), 639 (meeting with Cuban Maritime Administration).

14

produced. *Kaplan*, 2018 WL 6445886, at *2; *Siegmund*, 2018 WL 3725775, at *5; *In re Lindsey*, 148 F.3d at 1106.

## CONCLUSION

For the foregoing reasons, Havana Docks respectfully requests that the Court grant this motion and order Royal to produce withheld evidence reflecting its knowledge of the LIBERTAD Act and OFAC regulations, and its exchanges with COMAR, an agency of the Cuban Government.

DATED: March 22, 2021.         Respectfully submitted,

**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
E-mail: eservice@colson.com

By: s/ *Roberto Martínez*
Roberto Martínez
Florida Bar No. 305596
bob@colson.com
Stephanie A. Casey
Florida Bar No. 97483
scasey@colson.com
Zachary A. Lipshultz
Florida Bar No. 123594
zach@colson.com
Aziza F. Elayan-Martinez
Florida Bar No. 92736
aziza@colson.com

- and -

**MARGOL & MARGOL, P.A.**
2029 3rd Street North
Jacksonville Beach, Florida 32250
Telephone: (904) 355-7508
Facsimile: (904) 619-8741

>Rodney S. Margol, Esquire
>Florida Bar No. 225428
>Rodney@margolandmargol.com
>
>*Attorneys for Plaintiff Havana Docks Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of the Court. I also certify that the foregoing document is being served this 22nd day of March, 2021, on all counsel of record or pro se parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

>By: /s/ *Roberto Martínez*
>Roberto Martínez